## THE KANSAS LUMBER COMPANY JR. v. THE CENTRAL BANK OF KANSAS.

CORPORATION, *Bound by Acts of Manager.* Where the general manager of a corporation, having authority, among other things, to collect money on checks for his corporation, presents to a bank for payment a check for $300, drawn in favor of the corporation and on the bank, and the officers of the bank, through a mistake, pay to such general manager $800 instead of $300, and the general manager and the corporation afterward refuse to return to the bank the $500 paid in excess over the amount of the check, and the bank sues the corporation therefor, *held*, that the bank may recover; that the general manager in receiving the $800 was acting in the course of his employment; that the money paid to him was paid to the corporation, and that the corporation is liable for the $500 in excess of the amount of the check, whether the general manager ever accounted to the corporation therefor, or not.

### *Error from Shawnee District Court.*

ACTION brought by *The Central Bank of Kansas* against *The Kansas Lumber Company Jr.*, to recover $500, alleged to have been an overpayment by the bank to the lumber company on a check. August 4, 1884, judgment for plaintiff. The defendant brings the case to this court. The material facts appear in the opinion.

*Waters & Ensminger*, for plaintiff in error.

*Peck, Johnson & McFarland*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the Central Bank of Kansas against the Kansas Lumber Company Jr., to recover the sum of $500, alleged to have been an overpayment by the bank to the lumber company on a check. The case was tried before the court and a jury, and the jury rendered a general verdict in favor of the plaintiff and against the defendant, and also made certain special findings of fact, and upon this general verdict and these special findings the court below rendered judgment in favor of the plaintiff and

against the defendant for the sum of $538.59, including interest, and costs. To reverse this judgment the defendant, as plaintiff in error, now brings the case to this court.

The evidence in the court below was contradictory and conflicting, but there was sufficient evidence to sustain the verdict and findings of the jury; hence we must take the facts to be just as the jury found them to be, and just as the defendant in error, plaintiff below, claims them to be. The facts as they are claimed to be by the defendant in error, plaintiff below, are substantially as follows: The Kansas Lumber Company Jr. is a corporation engaged in the lumber business at Topeka, Kansas, and John W. Griffith is its general manager and agent. The Central Bank of Kansas is, or at least was during the time while the transactions involved in this case were occurring, a corporation doing a banking business at Topeka, Kansas. On May 18, 1883, W. A. Sells drew a check for $300 on the said Central Bank in favor of the said lumber company, to pay a debt due from Sells to the lumber company for lumber, and handed the check to Griffith. Griffith immediately took the check to the Central Bank for payment, and the officers of the bank, through a mistake, taking a figure "3" in the check for a figure "8," paid to Griffith the sum of $800, instead of the sum of $300; the entire payment being made in twenty-dollar gold pieces. Immediately afterward, and on the same day, the officers discovered their mistake and demanded of Griffith that he should rectify the same and pay back to the bank the sum of $500, that being the amount of the excess paid to Griffith over and above the amount of the check, but Griffith refused, claiming that he had received only $300. There was evidence tending to show that Griffith accounted to the lumber company for the sum of $300, but what he did with the other $500 is not shown. In five days thereafter, and on May 23, 1883, the Central Bank commenced this action against the lumber company to recover the said $500 paid in excess over the amount of the check.

The plaintiff in error, defendant below, claims that the verdict and findings of the jury are not sustained by sufficient

evidence, but we think they are, and shall therefore proceed to the next and principal question involved in the case, which is, whether upon the facts of this case, and under the doctrine of *respondeat superior*, the plaintiff in error, defendant below, is responsible, or not.   It contends among other things as follows:

"Plaintiff in error in this case contends that even if the fact of John W. Griffith having received the excess of five hundred dollars in mistake from the bank be fully established, still plaintiff in error cannot be held responsible for this tortious act of Griffith, unless it be first shown affirmatively by the defendant in error that the Kansas Lumber Company Jr. received the benefits or avails of said tortious act; or, in other words, unless it is shown conclusively by the testimony that the five hundred dollars paid in excess of the check by mistake to John W. Griffith went into the coffers of the Kansas Lumber Company Jr., and that it received the benefits thereof."

In other words, the plaintiff in error claims that it did not at any time authorize Griffith to commit the wrongful acts charged against him; that he did not, therefore, in committing the same, act for it or on its behalf, or within the scope of the authority conferred upon him, and therefore that it is not responsible for such wrongful acts unless it afterward ratified and confirmed the same by receiving the benefits or avails thereof.   We do not agree with counsel for plaintiff in error.   In the case of *The Philadelphia & R. Rld. Co. v. Derby*, 55 U. S. (14 How.), 468, 486, the following language is used:

"The rule of '*respondeat superior*,' or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful.   If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment.   (See Story on Agency, § 452; Smith on Master and Servant, 152.)

"There may be found, in some of the numerous cases re-

ported on this subject, *dicta,* which, when severed from the context, might seem to countenance the doctrine that the master is not liable if the act of his servant was in disobedience of his orders. But a more careful examination will show that they depended on the question, whether the servant, at the time he did the act complained of, was acting in the course of his employment, or in other words, whether he was or was not at the time in the relation of servant to the defendant."

In Morawetz's work on Private Corporations, § 95, the following language is used:

"It is a general rule of the law of agency, that a principal is liable for any tort committed by his agent in the performance of the business which he was employed to transact, even though the particular act constituting the tort may have been done without the knowledge of the principal and in violation of his express directions; but a principal is not responsible for an act performed by his agent while in no manner engaged in performing his business."

We might properly quote much from Mr. Wood's treatise on the Law of Master and Servant, but we will content ourselves with quoting the following:

"Sec. 282. The master assumes the risk of an improper discharge of duties by the servant. Indeed, he takes the risk of all the consequences of a wrongful execution of his duties, on the part of any person whom he employs, in whatever capacity. By such employment he sets in motion that which produces the injury."

We would also quote the following, from Cooley on Torts, page 534:

"The maxim applied here is the familiar one: *Qui facit per alium facit per se.* That which the superior has put the inferior in motion to do must be regarded as done by the superior himself, and his responsibility is the same as if he had done it in person. The maxim covers acts of omission as well as of commission, and embraces all cases in which the failure of the servant to observe the rights of others in the conduct of the master's business has been injurious."

In Wisconsin it has been held that a master is liable for a wrong done by his servant in the course of his employment, whether done through the negligence or the malice of the lat-

ter: *Craker v. C. & N. W. Rly. Co.*, 36 Wis. 657. See also the following cases: *Rounds v. D. L. & W. Rld. Co.*, 64 N.Y. 129; *Cohen v. D. D., E. B. & B. Rld. Co.*, 69 id. 170; *Jeffersonville Rld. Co. v. Rogers*, 38 Ind. 116; *T. W. & W. Rly. Co. v. Harmon*, 47 Ill. 298; *C. B. & Q. Rld. Co. v. Dickson*, 63 id. 151. See also the comments of Mr. Thompson, in his work on Negligence, p. 886, § 4. See also, upon the question of false representations made by the agent, the case of *Griswold v. Haven*, 25 N. Y. 595.

We think the exact question involved in this case is, whether Griffith, when he received the $800, was acting within the course of his employment, or not. If he was, then it cannot make any difference whether he ever paid over the money to any person for the benefit of the lumber company, or not, nor whether the lumber company ever received any benefit from it, or not. But if Griffith was not at the time acting within the course of his employment, then, under the other facts of this case, the lumber company is not liable. The question of liability generally, on the part of a master to third persons because of benefits received by him from the acts of his servant, arises only where the servant has acted outside of the course of his employment, but the master has afterward ratified or confirmed his acts by receiving the benefits thereof. Such is not this case. If Griffith acted outside of the course of his employment in this case, then there is nothing that shows that the lumber company ever received any part of the $500, or any benefit from Griffith's wrongful acts, or that it ever ratified or confirmed the same. We think that Griffith when he received the money was acting within the course of his employment, and we also think that he was acting within the scope of the authority conferred upon him by the lumber company. He was not a special agent nor an agent for a special purpose, but was the general manager for the lumber company, its *alter ego*, and had the full control of all its business in all its departments. When he took the check to the bank for the purpose of receiving payment thereon, he did so with the fullest and most

*Corporation bound by acts of its general manager.*

complete authority from the lumber company, and when he received payment thereon, he received it for the lumber company. As before stated, the $800 received by him was all received in twenty-dollar gold pieces, every one of which he received on the check for his company, and as the general manager of its business. Now if it be claimed that there was any one of these pieces of money which he did not so receive, then can anyone tell which was the piece? It is claimed by the lumber company that he received only fifteen of these pieces on the check, and for the company.; and that he received the other twenty-five pieces on his own account. Now which fifteen pieces did he receive on the check and for the company, and which twenty-five pieces for himself?—and how can the pieces which he received on the check and for his company be separated from the others? Indeed, he received all on the check, all for his company, and all as the general manager of its business. If it be further claimed that although he was the general manager of the business of the company, still that he was not the company in fact, but only an agent thereof, and that the money was not paid to the company in fact, but only to an agent, and an agent who had no authority to receive money wrongfully, but only rightfully, still that would make no difference. The lumber company·is a corporation, invisible, intangible, and existing only in contemplation of law, and it could not receive money in any other manner than through the intervention of an agent. Indeed, a corporation can perform no act except through the intervention of an agent; and if it is not to be held liable for the wrongful acts of its agents, then it could seldom be held liable at all, for it is seldom that a corporation authorizes the wrongful acts of its agents. To give immunity to corporations in such cases would be against all authority. If Griffith, after he received the money, had paid it to some other agent of the company, even to the company's treasurer if it had one, still the company itself would not have received the money any more than it did when Griffith received it. A treasurer of a corporation is not the company any more than Griffith was his

company. A treasurer is himself only an agent. Now Griffith was an agent fully authorized to receive money for the company, on checks or otherwise, and as fully authorized to receive the same as any other agent of the company could be; and when he received this money on the check for the company, the money went into the hands of the company as much as it could have done if it had gone into the hands of any other agent of the company. Indeed, it went into the hands of the company as much as it would have done if it had gone into the hands of the treasurer of the company, if the company had one; for, as before stated, a treasurer of a corporation is nothing more than an agent.

We think the decision of the court below is correct, and it will be affirmed.

All the Justices concurring.