WILLIAM J. McDONALD

v.

THE WESTERN REFRIGERATING COMPANY.

*Warehousemen—Receipt—Mistake—Sale—Redemption of with Knowledge—Estoppel—Abatement—Partnership.*

1. The knowledge of one of several co-partners as to a matter of firm business must be looked upon as the knowledge of the firm.

2. The transfer to an innocent party of a warehouse receipt erroneously claiming to cover goods in store of a given firm, a member thereof knowing of such mistake, will render such firm liable to the warehouseman as trustee of the receipt or the proceeds thereof.

3. In an action brought by a warehouse company to recover an amount paid to redeem a receipt given by it, the same through mistake claiming to cover goods in its hands, this court holds, that the defendant can not, in the absence of a plea in abatement, raise the point of the non-joinder of a co-partner, that, in view of the facts, he is estopped from taking the position that payment by the plaintiff to the holder after knowledge of the mistake operated as a bar to the recovery thereof; and declines to interfere with the judgment for the plaintiff.

[Opinion filed January 22, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. JULIUS S. GRINNELL, Judge, presiding.

This case was submitted to the court below on the following agreed statement of facts:

The Western Refrigerating Company, plaintiff, and William J. McDonald, defendant, in the above entitled cause, now pending and undetermined in said court, in pursuance of the statute in such case provided, do hereby make this an agreed case, and stipulate as follows to wit: That on the 27th day of October, 1888, the plaintiff filed its declaration containing the common counts, consolidated in due form; that on the 27th day of October, 1888, the defendant filed his plea of the general issue to said declaration, to which the plaintiff added a *similiter*, that the facts of the matter are as follows, to wit:

That during the year 1887, until August 23, 1887, the said defendant and one Amandus Bennett were partners, trading as McDonald & Bennett, and as such partners dealing in eggs and other produce in Chicago, in said county; that said plaintiff was then and there and now is engaged in the cold storage and warehouse business, storing and warehousing certain classes of goods other than grain; that during the year 1887, prior to May 25, 1887, said McDonald & Bennett placed on storage in the warehouse of said plaintiff, 472 cases of eggs; that said 472 cases of eggs were and are all the eggs said McDonald & Bennett ever had on storage with the said plaintiff; that on May 25, 1887, the said plaintiff issued to said McDonald & Bennett a receipt, commonly known as a warehouse receipt, for 300 cases of said 472 cases of eggs; that on August 6, 1887, the said plaintiff issued to said McDonald & Bennett another such receipt for 100 more cases of said 472 cases of eggs; that on August 10, 1887, the said plaintiff issued to said McDonald & Bennett another such receipt for fifty more cases of said 472 cases of eggs; that after the issue of said receipts on August 10, 1887, said McDonald & Bennett had on storage with said plaintiff only twenty-two cases of eggs for which such receipts had not already been delivered to them; that said Bennett had personally attended to the business of storing all said eggs with said plaintiff; that said Bennett knew how many eggs said McDonald & Bennett had upon storage with said plaintiff; that said Bennett had personally gone to said plaintiff and obtained said receipts for 300 cases, 100 cases and fifty cases of eggs for said McDonald & Bennett; that said Bennett knew how many eggs said McDonald & Bennett had upon storage with said plaintiff after the issuing of said receipts for 300 cases, 100 cases and fifty cases of eggs, for which such receipts had not already been issued by said plaintiff to said McDonald & Bennett; that said defendant did not know how many eggs McDonald & Bennett placed upon storage with said plaintiff; that said defendant did not know that said receipts for 300 cases, 100 cases and fifty cases of eggs had been issued by said plaintiff to said McDonald & Bennett, and delivered to said

Bennett; that said defendant did not know how many eggs said McDonald & Bennett had upon storage with said plaintiff after the issue of said receipts for 300 cases, 100 cases and fifty cases of eggs, for which such receipts had not already been issued to said McDonald & Bennett; that on the 17th day of August, 1887 (said defendant and said Bennett each having the knowledge above ascribed to him respectively), said defendant went to the office of said plaintiff and inquired of said plaintiff how many eggs said McDonald & Bennett had upon storage with said plaintiff, for which it had not already issued receipts to said McDonald & Bennett, and requested said plaintiff to issue a receipt to said McDonald & Bennett for the number of eggs said McDonald & Bennett then had upon storage with said plaintiff, for which it had not already issued such receipts to said McDonald & Bennett; that said plaintiff then and there, in response to said inquiry and request of said defendant, said there were yet 122 cases of eggs there, and issued to said McDonald & Bennett another such receipt for 122 cases of eggs and delivered the same to said defendants; that said plaintiff did not intend to issue, nor did it then believe that it had issued said last mentioned receipt for any more eggs than said McDonald & Bennett had upon storage with said plaintiff, for which such receipts had not already been issued to them; that said last mentioned receipt was issued for 122 cases of eggs instead of for twenty-two cases of eggs, by reason of the mistake of the book-keeper of said plaintiff in computing the number of cases of eggs said McDonald & Bennett then had upon storage with said plaintiff, for which such receipts had not already been issued to said McDonald & Bennett; that said McDonald & Bennett did not expect to receive such a receipt for any more eggs than they had upon storage with said plaintiff for which such receipts had not already been issued to them; that said defendant would not have taken said receipts for 122 cases of eggs if he had known that said McDonald & Bennett then had only twenty-two cases of eggs upon storage with said plaintiff, for which such receipts had not already been issued to said McDonald & Bennett; that said defendant on the day

that he received said receipt for 122 cases of eggs showed it to said Bennett and talked with him about it; that said Bennett then and there knew that said receipt for 122 cases of eggs had been issued for 100 more cases of eggs than said McDonald & Bennett then had upon storage with said plaintiff, for which said plaintiff had not already issued such receipts to said McDonald & Bennett, but such fact was not actually known to said McDonald; that said McDonald & Bennett dissolved partnership by agreement on August 23, 1887; that by such dissolution said defendant retained all the assets of said McDonald & Bennett except the proceeds of the sale of said receipts for 100 cases and fifty cases of eggs; that said receipts for 300 cases and 122 cases of eggs were indorsed by said McDonald & Bennett to said defendant upon said dissolution; that said defendant then and there assumed the liabilities of said McDonald & Bennett; that said Bennett upon and after said dissolution of partnership was indebted to said defendant in about the sum of $600; that said defendant sold said receipts for 300 cases and 122 cases of eggs, the latter part of December, 1887, to Cougle Bros., for the value thereof; that said Cougle Bros., when they purchased and paid therefor, were unaware of said mistake; that before said plaintiff became aware of said mistake, it delivered to said Cougle Bros. 422 cases of said 472 cases of eggs and took up said receipts for 300 cases and 122 cases of eggs and canceled them; that on August 16, 1887, said Bennett sold and indorsed it in the name of McDonald & Bennett, aforesaid, and delivered said receipts for 100 cases and fifty cases of eggs to Summers, Morrison & Co., and then and there received therefor the sum of $750; that said defendant did not then and there know of the last mentioned sale by said Bennett; that the last mentioned sale by said Bennett was then and there by him solely made for, and the proceeds thereof were then and there by him solely appropriated to the use of said Bennett himself; that when said Summers, Morrison & Co. purchased and paid for said last mentioned receipts, they were not aware of said mistake or fraud; that soon thereafter said Summers, Mor-

rison & Co. transferred said last mentioned receipts to the Metropolitan Bank as collateral security for their indebtedness to said bank; that said bank has so held said last mentioned receipts until the latter part of December, 1887; said Bennett purchased said last mentioned receipts from said Summers, Morrison & Co. and paid therefor the sum of $850; that before the third day of February, 1888, and before said plaintiff became aware of said mistake, it delivered to said Bennett fifty cases of said 472 cases of eggs, and took up from him said receipt for fifty cases of eggs and canceled it; that on the 3d day of February, 1888, said Bennett presented said receipt for 100 cases of eggs to said plaintiff, and demanded 100 cases of eggs; that said plaintiff never knew or had the slightest suspicion of its said mistake until after the presentation of the last mentioned receipt upon the last mentioned date; that all the said receipts, except the last mentioned receipt, had been taken up and canceled as aforesaid before the 3d day of February, 1888; that on the day last aforesaid, after the presentation of said receipt for 100 cases to the plaintiff as aforesaid, the president of said plaintiff went with said defendant to the office of the attorney of said defendant; that on conference there had, said defendant's attorney advised said plaintiff to file the bill in chancery hereinafter mentioned; that said plaintiff on the day last aforesaid, thereafter advised with his own attorneys, and upon the 4th day of February, 1888, it filed its bill in chancery in the Superior Court of said county against said Bennett, praying that he be restrained, by injunction, from transferring or assigning said receipt for 100 cases of eggs, and that he be ordered to deliver the same up to be canceled; that a writ of injunction was on the last day aforesaid issued and served upon said Bennett; that the counsel in said last mentioned cause of said plaintiff, during the progress thereof, conferred repeatedly with said W. J. DcDonald, advised him of the allegations and evidence offered by said Bennett, and sought through said McDonald countervailing proof; that said McDonald made an affidavit in said chancery suit, which was read upon the hearing thereof; that said McDonald was in

court voluntarily at different times, when it was expected
said chancery suit would be heard; that on April 18, 1888,
upon motion of said Bennett said injunction was, by Henry
M. Shepard, one of the judges of said Superior Court, dis-
solved; that on April 30, 1888, said cause in chancery came
on to be finally heard before Judge Henry M. Shepard; that
the counsel in said cause knew of no evidence that would aid
said plaintiff in addition to that read upon the motion to dis-
solve the injunction, and for that reason stipulated that said
cause in chancery might be finally heard upon that evidence;
that upon such final hearing on the day last aforesaid a decree
was entered, which found that said receipt for 100 cases
was then and ever had been a valid receipt, and dismissed
said bill in chancery and assessed damages against said plaintiff
for suing out said injunction; that thereafter on the day last
aforesaid said plaintiff paid said Bennett the damage so assessed
as aforesaid, and $450 for said receipt on 100 cases of eggs;
that $450 was the market value of said last mentioned receipt
(less what the eggs were packed in) on February 3, 1888; that
said defendant McDonald, received $620.72 for said receipt
for 122 cases of eggs on January 5, 1888; that said McDonald
at last mentioned date received $484.14 for the 100 cases of
eggs mentioned in said last mentioned receipt, in addition to
and over and above what he then received for the first
twenty-two cases of eggs in said last receipt mentioned; but
said 122 cases of eggs were sold and paid for in one lot; that
said McDonald received the said last mentioned sum in
money, and after April 30, 1888, and before the beginning of
this action, he refused to pay said plaintiff said $484.14 or any
other sum of money whatever because of the premises.

It is further stipulated and agreed as above that said
McDonald did not, after August 16, 1887, own said receipts
for 100 cases and fifty cases of eggs, or either of them, or any
part, portion or interest therein.   It is further stipulated and
agreed by and between said parties to this action, that the
point of law at issue between them is as follows, to wit: Under
the foregoing stipulation and agreement is the said plaintiff
entitled to recovery of said defendant McDonald ?

McDonald v. Western Refrigerating Co.

And it is further stipulated and agreed upon between the parties to this action, that upon the foregoing agreed case, containing the points of law at issue between them, and filed in said cause, the court shall decide in the same manner as if the facts aforesaid were proved upon the trial of said issue, in pursuance of the statute in such case provided, and it shall find that the said plaintiff is entitled to recover against the said defendant; it shall render judgment in favor of the plaintiff against the said defendant for the sum of $484.14, and the costs of suit to be taxed by the clerk, and if it shall find that the plaintiff is not entitled to recover, it shall render judgment in favor of the defendant, against the plaintiff, dismissing the plaintiff's suit, and for the costs of suit to be taxed by the clerk.

The court found for the plaintiff for $484.14, and gave judgment accordingly, and from said judgment this appeal is prosecuted.

Messrs. C. H. & C. B. Wood, for appellant.

Payment having been voluntarily made with full knowledge of all the facts, the law is well settled that the money can not be recovered back. Elston v. Chicago, 40 Ill. 514; Brumagim v. Tillinghast, 18 Cal. 265; Evans v. Gale, 17 N. H. 573; Jones v. Wright, 71 Ill. 61; Frambers v. Risk, 2 Ill. App. 499.

The fact that the plaintiff did not properly present its case, or even if it was misled by the Superior Court, would not give it any right to recover the money back. The defendant was no party to the suit in the Superior Court, and though he advised the bringing of that suit, we think that was correct, because Bennett had no right to that receipt; he had paid nothing for it, and could not collect it of the plaintiff by any suit whatever.

We understand it to be a clear head of equity jurisdiction, that a court will enjoin the negotiation of commercial paper when obtained through improper means. 2 High on Injunctions, Sec. 1126.

A warehouse receipt can not occupy any better position than negotiable paper.

The plaintiff settled this matter knowing that it was an unjust demand, and now it wants to recover of the defendant, who was in nowise to blame, for its own negligence. This can not be done.    Patterson v. Cox, 25 Ind. 261; Newell v. March, 8 Iredell (N. C.) 443;   Williams v. Colby, 44 Vt. 40; Watson v. Cunningham, 1 Blackford, 321; Clancy v. McEnery, 17 Wis. 177.

This judgment upon the facts can not be maintained against McDonald alone.

The contract in contemplation of law arising with both partners, they must both be joined.    Page v. Brant, 18 Ill. 38.

The implied contract being joint, the joint cause of action must be proven, and even if the objection does not appear upon the pleadings, the plaintiff may be non-suited upon the trial if he fail in proving a joint contract.    C. & St. L. R. R. Co. v. Easterly, 89 Ill. 158.

The proof should be the same as if all the parties to the joint contract had been sued before a recovery can be had against any.    Griffith v. Furry, 30 Ill. 252; Rosenberg v. Barrett, 2 Ill. App. 386.

Messrs. GEORGE C. FRY and JAMES E. BABB, for appellee.

Whenever one person, through mistake, obtains the legal title to or apparent ownership of property which belongs to another, the former person holds such property in trust for the use of the latter.    Holland on Jurisprudence, 4th Ed., 206; Perry on Trusts, 1st Am. Ed., Sec. 186; Pomeroy on Equity Jurisprudence, Vol. 2, Sec. 981;   Cutts v. Guild, 57 N. Y. 235;   McCloskey v. McCormick, 44 Ill. 336.

The mistake in this case was of such a character, and made under such circumstances as to diligence on the part of the plaintiff, innocence on the part of the defendant, and otherwise, that the defendant as indorsee of McDonald & Bennett, if he had notice, held for the use of the plaintiff the 122-case receipt, over and above the first twenty-two cases thereof, and the money received therefor.    Kingston Bk. v. Etlinge, 40 N. Y. 325;   Clark v. Eckroyd, 12 Upper C. App. Rep. 428; Kansas Lumber Co. v. Central Bk. of Kas., 34 Kas. 635; Citi-

McDonald v. Western Refrigerating Co.

zens' Bk v. Graffin, 31 Md. 507; U. S. v. Onondaga Co. Sav. Bk., 39 Fed. Rep. 259; McCloskey v. McCormick, 44 Ill. 336; McLean Co. Bk. v. Mitchell, 88 Ill. 52; Wolf v. Beaird, 123 Ill. 585.

While the plaintiff in this case was no more negligent than was the plaintiff in any of the cases cited under proposition second above, yet negligence is immaterial, unless it appear that the defendant was not charged with knowledge of the mistake, and in consequence has altered his position, and the burden is upon defendant to show such lack of knowledge and alteration of position. Walker v. Conant, 31 N. W. (Sup. Ct. Mich.) 786; Mayor v. Mayor, 63 N. Y. 457; U. S. v. Onondaga Sav. Bk. 39 Fed. R. 259.

Delay in discovering a mistake will not preclude a recovery. Only delay in making it known after discovery will have that effect. Nat. Bk. of Com. v. Nat. Mechs. B. Ass'n, 55 N. Y. 217; Canal Bk. v. Bk of Albany, 1 Hill, 287; Bk. of Com. v. Union Bk., 3 Comst. 236; Clark v. Eckroyd, 12 Upp. C. App. Rep. 428.

The knowledge which defendant's partner had of the plaintiff's mistake, charged the defendant with knowledge as effectually as if he had had actual knowledge. Black v. Bird, 1 Haywood (N. C.), 273; Puller v. Roe, 1 Peake's N. P. 260; Jacaud v. French, 12 East, 317; Bigelow v. Henniger, 33 Kas. 362; Marietta & C. Ry. Co. v. Mowry, 28 Hun, 79; Capelle v. Hall, 12 Nat. Bankruptcy Reg. 5 and 6; Story on Partnership, 6th Ed., Sec. 236; Snarr v. Small, 13 Upp. C. Q. B. Rep. 125; Stevenson v. Woodhull, 19 Fed. R. 575; Manny v. Glendenning, 15 Wis. 53; Otis v. Adams, 41 Me. 258; Sparrow v. Chisman, 9 Barn. & C. 241; Quinn v. Fuller, 7 Cush. 224.

The plaintiff is not estopped to show its mistake because, first, the defendant was charged with knowledge of the mistake, and therefore, according to Bigelow v. Henniger, 33 Kas. 362, cited and reviewed *supra*, had no right to rely upon the plaintiff's representation; and because, second, it does not appear that the defendant has altered his position to his detriment by reason of the mistake.

The plaintiff lost no rights as against this defendant, when it paid Amandus Bennett for said receipt for 100 cases of eggs, for the following reasons:

Because said Bennett had a good title to that receipt; and while the plaintiff may have had some right of remedy against said Bennett and his partner, because of said mistake, yet such right of the plaintiff was not such as to relieve it from honoring the said receipt.

Because, defendant's firm, having sold and received the value of said receipt, he needed and was entitled to no protection against it, even if Bennett had no title thereto ; *i. e.*, the receipt by him of its value, rendered the validity of the title thereof, which plaintiff honored, immaterial to him. Graves v. Harwood, 9 Barb. 477.

Because the sale of said receipt by defendant's firm, and the receipt of value therefor, which is still retained, estops the defendant from asserting the invalidity of said receipt, or the title thereto. Defendant can not hold the benefits and escape the burdens of said receipt's validity. Thomas v. Quintard, 5 Duer, 81; Cornwall v. Davis, 38 Fed. R. 882; Mills v. Hoffman, 92 N. Y. 182; Challiss v. McCrumb, 22 Kas. 157; Drennan v. Bunn, 124 Ill. 186; Mida v. Geissmann, 17 Ill. App. 212.

Because the adjudication in Western Refrigerating Co. v. Bennett, that said Bennett had a good title to said receipt, is binding upon the defendant here. Drennan v. Bunn, 124 Ill. 175; Bigelow on Estoppel, 4th Ed., 125 and 126.

The plaintiff lost no rights against this defendant when it honored the fifty-case receipt, for the same reasons above given with reference to the one hundred-case receipt, except the last, and for the additional reason, that when it was honored the plaintiff had not discovered the mistake.

The consequences of the mistake can not be shifted from the receipt in which it was made, to the one hundred-case receipt. Martin v. His Creditors, 14 La. An. 394; Skilling v. Bollman, 6 Mo. Ap. 80; Barber v. Meyerstein, L. R. 4, H. L. 317.

This action is based, not upon the joint obligation of the

defendant and his partner, but upon the implied promise of the defendant alone, growing out of the receipt by him, after the partnership was dissolved, of money for property, the title to which he acquired, with notice that it was held for the use of the plaintiff.

To raise the objection (even if it existed) that this action against only one of the partners is based upon a partnership obligation, it is necessary that the defendant should have pleaded in abatement. Bates on Partnership, Vol. 2, Sec. 1050; Paschel v. Hoover, 16 Ill. 340.

C. & St. L. R. R. Co. v. Easterly, 89 Ill. 158, is not in point, because there is a distinction between the right to avail of a non-joinder and a mis-joinder without pleading in abatement. See 1 Chitty's Pl. 44–46.

The record of this case in this court does not present any question which this court can consider, for the following reasons:

The stipulation in the record by which an agreed case purports to be made, under Sec. 74, Chap. 110, of the statutes of Illinois, does not set out any "point of law at issue between" the parties as required by that section. State Bk. v. St. L. Ry. Co., 122 U. S. 21; Sec. 74, Chap. 110, Rev. Statutes of Illinois, Vol. 2, p. 1837, Starr & Curtis' Ed.; Desty's Federal Procedure (last Ed.), Sec. 652, 258.

The stipulation for an agreed case, not being such as is required by the statute, this court can only review the case as it is shown by the bill of exceptions. W., St. L. & P. Ry. Co. v. Goodwine, 18 Ill. App. (middle of page 66).

The propositions of law in the bill of exceptions can not be reviewed, because the facts are not embodied therein. The court can not look to the facts in the stipulation, because it is not in the bill of exceptions. Leavitte v. Randolph Co., 85 Ill. 507; Wilson v. McDowell, 65 Ill. 522.

The exceptions recited by the clerk in the record of the judgment, to the overruling of the motion for a new trial and to the entry of the judgment, avail nothing. Wolf v. Campbell, 23 Ill. App. 482; Firemen's Ins. Co. v. Peck, 126 Ill. 493.

MORAN, J.   Appellant contends that the receipt in which the mistake was made was the one which, in the dissolution of the partnership, went to Bennett; and as appellee paid Bennett with knowledge of the mistake, the money could not be recovered back, and that it could not be recovered back from appellant under the circumstances of this case, and the refusal by the trial court to hold propositions embodying such contention is pressed for error.

As appellant's points all arise on the statement of facts, it is unnecessary to consider the formal propositions submitted to the court to be held.   The question is, upon the facts as stated, is the judgment of the court proper?

The last receipt issued by appellee to McDonald & Bennett, dated August 17, 1887, was for 100 cases of eggs more than said firm had on store with appellee, and such issue is agreed to have been made by mistake of fact on the part of appellee, and the mistake is shown to have been known to Bennett on the day it was made, and before there was any dealing with the receipt by the firm.   How did this knowledge of Bennett affect the firm?   We think it clear and well sustained by authority, that such knowledge by one partner is not only notice to the firm of the facts, but that it must in law be held to be the knowledge of his co-partner, for what is known to the firm must be taken to be known by all the persons composing the firm, where the matter relates to the firm business or transactions.   1 Bates on Partnership, Secs. 390–391 and cases cited in notes.

If then the firm had, in the regular course of business, transferred to an innocent party the warehouse receipt in question, and had received the money therefor, there can be no doubt but that said firm would be liable to appellee for the money, for the circumstances would make the firm a trustee of the receipt, or of the proceeds thereof for appellee.   Kingston Bank v. Etlinge, 40 N. Y. 394; Kansas Lumber Co. v. Central Bk. of Kas., 34 Kas. 635; McLean Co. Bank v. Mitchell, 88 Ill. 52.

Defendant is liable for the money or property received by the firm for the use of appellee, and the non-joinder of his

co-partner could only be pleaded in abatement.   There was no such plea, and the point that Bennett should be sued with defendant can not be made on this record.

As to the suggestion that appellee has paid to Bennett the amount represented by the receipt, after knowledge of the mistake, and is therefore barred, the circumstances set out estopped appellant from taking that position.   It appears that on a conference with appellant and his attorney, after the mistake was discovered, as to what should be done, appellant's attorney advised appellee to institute the chancery suit against Bennett, which was soon after commenced, and that appellant was advised of its progress and aided by his evidence and suggestion in its prosecution.

As we have already seen, appellant was at that time liable to appellee, as a member of the firm, for the receipt or its proceeds; it is manifest, therefore, that a suit to collect from Bennett alone, or to prevent his negotiation of the receipt, was in the interest of appellant.   Under such circumstances he was bound by the result of that litigation whether the case was correctly decided or not.

This proposition is fully sustained by the case of Cole v. Favorite, 69 Ill. 457.   The Supreme Court there said: "Whether the suit in the Federal Court was decided correctly or not, can make no difference in the result of this case.   The suit in the Federal Court, although in the name of appellee, was prosecuted at the request, and for the benefit of appellant. He advised and directed it, was a witness therein, and while he was not formally a party to the record, he was a party in interest, and must be regarded a privy.   In that suit it was adjudicated and determined that the receipt was a contract, and by its terms and conditions appellee was not liable to appellant to insure the barrels therein named after first of September, 1865.   *   *   *   The merits of this question have been previously tried, and parties and privies must be concluded."

The question there decided is in principle applicable here. See also Drennan v. Bunn, 124 Ill. 175.

The judgment of the Circuit Court is right, and will therefore be affirmed.                              *Judgment affirmed.*