JEROME HARRIS, Plaintiff-Appellee, *v.* FAULTFINDERS, INC., Defendant-Appellant.

First District (3rd Division)    No. 79-2113

Opinion filed December 30, 1981.

Coghlan, Joyce and Nellis, of Chicago (William J. Nellis, Robert P. Nolan, and Thomas C. Nyhan, of counsel), for appellant.

Richard J. Hollander, of Silberman & Gershon, Ltd., and Wigoda & Wigoda, both of Chicago (William S. Wigoda, Robert M. Wigoda, and Gary I. Wigoda, of counsel), for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Jerome Harris, brought this action to collect unpaid commissions allegedly owed to him by defendant, Faultfinders, Inc. Plaintiff also sought to recover money owed to him pursuant to a profit sharing plan. Defendant filed counterclaims against plaintiff in which it alleged appropriation of trade secrets and confidential information, formation of a competing organization, breach of an employment agreement and unjust enrichment. In a bench trial, the trial court entered judgment in the amount of $10,000 in favor of plaintiff on the count relating to the unpaid commissions. The court entered judgment in favor of defendant on the count relating to the profit sharing plan. Judgment was entered in favor of plaintiff on the counterclaims. We affirm.

Plaintiff began his employment with defendant in July or August of 1971. He was hired to open a Chicago service center, and he was to test printed circuit boards and sell equipment on which the circuit boards

could be tested. While employed by defendant, plaintiff signed a document entitled "Confidential Information and Patent Agreement." The agreement provides that the employee is to faithfully and to the best of his ability perform such duties as the company shall direct, and the employee is to devote all of his working time to such services and duties. The agreement further states that for a period of one year after termination of his employment, the employee is not to render services, directly or indirectly, to any competitive organization.

In 1972, while plaintiff was at a sales meeting, an incentive plan for service center employees was introduced. The plan is based on the company's two principal sources of income, which are sales of the company's products and test service work. During a certain accounting period (six months for product sales and two months for services), the employee's performance is monitored to determine his incentive pay. Under the plan, the company establishes a bogey for each employee, which is a base after which incentive pay is earned. Plaintiff's bogey was his salary squared divided by 1000. Incentive pay related to services begins when the sales in a two-month period equal an employee's bogey divided by 12. Incentive pay related to product sales begins when the sales in a six-month period equal an employee's bogey. The company agreed to reduce an employee's bogey pertaining to product sales in proportion to the attainment of his bogey pertaining to services.

In October 1974, plaintiff and Fred Wright, also an employee of defendant, incorporated a business known as Jefro. Plaintiff was an officer, director and 50% shareholder in the corporation. The business had been a partnership prior to its incorporation; the partnership began in approximately June of 1974. According to plaintiff, the sole purpose of the business was to service electronic game machines. Plaintiff had a friend who needed a technician to service the machines, and Wright was to perform the services. Plaintiff testified that he never solicited business on behalf of Jefro. He never attempted to sell any of Jefro's products or services to defendant's customers. The only service plaintiff performed for Jefro was that on one occasion he took a piece of equipment to Rockford.

Edward Vesely, a former employee of Motorola who was responsible for ordering test equipment, testified that Motorola was a customer of defendant. He first heard of Jefro in the second quarter of 1974 when Wright approached him offering his services as a programmer of defendant's equipment. Motorola purchased software equipment from Jefro in May or June of 1974, and other programs were purchased in 1974 and part of 1975. Invoices and purchase orders from Jefro to Motorola were introduced into evidence.

Vesely testified that prior to December 1974, there was no connection

of plaintiff to Jefro. According to Vesely, he first talked to plaintiff regarding Jefro in the fourth quarter of 1974. Vesely, plaintiff and Wright went to lunch, and plaintiff discussed the possibility of selling Motorola a holding fixture which would adapt defendant's machine to a board being tested. Subsequently, Vesely generated a purchase requisition for a holding fixture to Jefro. Plaintiff's name was on the purchase requisition, but it was scratched off.

According to Vesely, he talked to plaintiff a second time in the last quarter of 1974. During this meeting, plaintiff discussed delivering additional holding fixtures from Jefro to fit defendant's systems or machines. Vesely stated that he spoke to plaintiff a third time at Motorola in February or March of 1975. Plaintiff pointed out some of the changes that could be made by interfacing defendant's machine to the printed circuit board being tested in order to overcome some inadequacies of the fixture.

Plaintiff testified that at the first discussion with Vesely and Wright during the last quarter of 1974, they discussed defendant's operations and the programming and fixturing of defendant's machines for Motorola. Plaintiff did not make any solicitation regarding Jefro. When Vesely indicated that he was upset that he was not getting service or receiving programs from defendant's office in New York, Wright suggested that he could write programs for Motorola on a part-time basis. According to plaintiff, during the second meeting with Wright and Vesely, Wright discussed some problems regarding the programs he was writing for Motorola. Wright did not make any request that Vesely purchase anything from Jefro. Plaintiff was representing defendant at this meeting. Plaintiff denied that he was at the third meeting at Motorola in February or March of 1975.

Plaintiff's employment with defendant was terminated in January 1975. In July 1975, plaintiff sold all of his stock in Jefro to Wright.

Marilyn Kunz, an accountant, testified for plaintiff. Based on her calculations, plaintiff was owed $16,224 if plaintiff's bonus is included in his salary. If the bonus is not included in the salary, plaintiff was owed $20,624. Kunz's calculations were based on plaintiff's designations of figures on defendant's accounts receivable ledgers as being either product sales or services sales. Dan Casey, manager of accounting for defendant, testified that based on his calculations, plaintiff was owed $1754 in commissions if only Illinois customers were included. If some customers outside Illinois were included, plaintiff was owed $4973. Robert Sheedy, defendant's expert witness, testified that he had audited Casey's worksheets and the figures were reasonably accurate. Sheedy's independent determination of commissions showed that plaintiff was owed $1750 if only Illinois customers were taken into account and $4000 if some out-of-State customers were taken into account.

The trial court found that plaintiff did not compete with defendant or make any solicitation on behalf of Jefro. The court also found that plaintiff was entitled to certain commissions, but that there were errors in all computations. A judgment for $10,000 was entered in favor of plaintiff.

Defendant first argues that the trial court's finding that plaintiff did not compete with defendant is against the manifest weight of the evidence. Defendant contends that plaintiff breached the valid and enforceable restrictive covenant found in the "Confidential Information and Patent Agreement"; that plaintiff breached the common law duty of loyalty owed to defendant; and that because of these breaches, plaintiff had no right to salary or commissions during this period of competition.

Plaintiff testified that he never solicited any business on behalf of Jefro and never attempted to sell any of Jefro's products to defendant's customers. According to plaintiff, the only service he performed for Jefro was that he took a piece of equipment to Rockford. There was no connection between this incidental trip and any of defendant's customers. Although Vesely testified that plaintiff had discussed the sale of Jefro's products to Motorola, this testimony was directly contradicted by plaintiff. Plaintiff acknowledged two meetings with Vesely but stated that he was representing defendant at these meetings. Plaintiff denied that he attended the third meeting mentioned by Vesely.

■■ Defendant argues that Wright's knowledge that Jefro was soliciting and performing services for defendant's customers must be imputed to plaintiff since the knowledge of one partner is imputed to all partners (see *Haywood v. Harmon* (1856), 17 Ill. 477, 479; *McDonald v. Western Refrigerating Co.* (1890), 35 Ill. App. 283, 294). However, we do not believe that principle is controlling here where the action is between plaintiff, as employee, and defendant, as his employer. The suit is not brought by or directed against the partnership or the partners as members of the partnership. It does not relate to partnership business but, rather, involves the actions of plaintiff as an employee and whether those actions constitute improper competition with his employer.

Under all the circumstances, we conclude that the trial court's finding that plaintiff did not compete with defendant, either during or after his employment, is not against the manifest weight of the evidence. Consequently, the finding of the trial court should not be disturbed. (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 707, 418 N.E.2d 1114, 1118.) Defendant's arguments are therefore unavailing.

■■ Defendant next argues that the trial court's exclusion of some of its exhibits was error. Defendant's exhibit No. 1 consisted of plaintiff's mileage and expense reports. The trial court refused to admit the exhibit since it had not been produced pursuant to a request to produce filed by

plaintiff. Plaintiff's request asked for documents relating to the calculation and payment of incentive pay, and it specifically defined "documents" as including expense reports. We conclude that the trial court did not abuse its discretion in determining that the mileage and expense reports should have been produced and in ruling that those reports should be excluded because of defendant's failure to produce them.

Other exhibits were also excluded because of defendant's failure to produce them pursuant to plaintiff's request to produce. The request asked for "all documents relating to the calculation and payment of the 'Incentive Pay' of plaintiff * * * for the period from November 1, 1972, through and including April 30, 1975, including without limitation, purchase orders and invoices relating to * * * all other sales and service work performed by plaintiff." Defendant maintains that the documents in question relate to sales outside plaintiff's assigned service area. However, plaintiff's service area was not specifically designated and was a matter for the trial court to determine. Also, the request plainly asked for purchase orders and invoices relating to *all* sales and service work performed by plaintiff. Therefore, the trial court did not err in refusing to allow defendant to introduce these exhibits.

Defendant next contends that the trial court erroneously allowed plaintiff to amend his bill of particulars after trial to include additional commissions. In his bill of particulars, plaintiff set forth the sales for which he was entitled to commissions and the amount of the commissions. The documents which apparently formed the basis of plaintiff's claims for additional commissions were produced subsequent to the filing of the bill of particulars and after plaintiff filed a motion for sanctions against defendant.

■■ A decision to allow the amendment of a bill of particulars lies within the sound discretion of the trial court. (*Brownell Improvement Co. v. Critchfield* (1901), 96 Ill. App. 84, 90, *aff'd* (1902), 197 Ill. 61, 64 N.E. 332.) Here, we cannot say that the trial court abused its discretion, especially since the documents which were the basis of the amendment were in defendant's possession, and therefore, defendant was not surprised.

Defendant also contends that plaintiff waived any right to commissions. Defendant bases this contention on the fact that plaintiff did not include commissions in a letter in which he set forth his financial claims against defendant. By letter, defendant had requested that plaintiff submit all of his claims against the company by February 7, 1975. Plaintiff responded, stating that the only claims he had were two weeks' severance pay, two weeks' vacation pay and his share of the profit-sharing plan. Plaintiff testified that when he wrote this letter, he did not think of commissions as money owed immediately. He also testified that he had con-

tinually made oral requests for commissions prior to his termination. Plaintiff also explained that he only had about seven days to answer defendant's letter, and he did not know the exact amount of commissions due. Approximately four months after sending this letter, plaintiff filed the instant suit.

■■ Waiver occurs when a party intentionally relinquishes a known right, either expressly or by conduct inconsistent with an intent to enforce that right. (*Saverslak v. Davis-Cleaver Produce Co.* (7th Cir. 1979), 606 F.2d 208, 213; see *Hartford Accident & Indemnity Co. v. D. F. Bast, Inc.* (1978), 56 Ill. App. 3d 960, 962, 372 N.E.2d 829, 831; *Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 1020, 339 N.E.2d 529, 533.) Here, the letter plaintiff sent to defendant did not contain any express waiver of plaintiff's right to receive his commissions. Also, under the circumstances, we cannot say that the failure to list commissions in this letter constituted a waiver. Furthermore, plaintiff's conduct does not lead to the conclusion that he was relinquishing his right to commissions. Plaintiff had been making oral requests for commissions, and then he brought this suit seeking unpaid commissions only four months after his employment was terminated. Plainly, nothing in the record indicates that plaintiff was intentionally relinquishing his right to commissions. Defendant's argument is therefore without merit.

Defendant finally contends that the award of $10,000 to plaintiff is not supported by the evidence and is manifestly erroneous. Defendant complains that plaintiff's evidence was impeached, and that plaintiff's calculations were erroneous because of the characterization of some product sales as service sales, the inclusion of sales outside plaintiff's assigned service area and the inclusion of a sale for which plaintiff should not have received credit.

■■ The determination of damages by a trial court sitting without a jury will not be set aside unless manifestly erroneous. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149, 281 N.E.2d 323, 326; *Society of Mount Carmel v. Fox* (1980), 90 Ill. App. 3d 537, 543, 413 N.E.2d 480, 485.) In the present case, plaintiff's expert witness testified that plaintiff was entitled to $16,224 or $20,624, while defendant's expert witnesses testified that plaintiff was owed $1750-$1754 or $4000-$4973. However, the trial court specifically stated that both sides made errors in their computations. The court was entitled to believe only portions of each side's testimony; it did not have to accept either the figure offered by plaintiff or the figure offered by defendant. Based on the extensive testimony as to damages offered by both parties, there was a reasonable basis in the record for the damages awarded. The damages awarded were within the range of evidence, and we cannot say that the trial court's

792

determination was manifestly erroneous. See *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149, 281 N.E.2d 323, 326; *Society of Mount Carmel v. Fox* (1980), 90 Ill. App. 3d 537, 544, 413 N.E.2d 480, 486.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

LINN and WHITE, JJ., concur.