ERICA HENRY, by her Mother and Next Friend, Jane Henry, Plaintiff-Appellee, v. ST. JOHN'S HOSPITAL *et al.*, Defendants (St. John's Hospital *et al.*, Defendants-Appellants).

Fourth District   No. 4—88—0491

Opinion filed March 17, 1989.—Rehearing denied April 13, 1989.

GREEN, J., dissenting.

Graham & Graham, of Springfield, Pierce & Meyer, of Chicago, and Heyl, Royster, Voelker & Allen, of Peoria (Hugh Graham III, John Meyer, Gary M. Peplow, and Karen L. Kendall, of counsel), for appellants.

Cook, Shevlin, Keefe & Ysursa, Ltd., of Belleville (Bruce N. Cook, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

St. John's Hospital and Dr. Shari Fitzgerald (St. John's-Fitzgerald) appeal a trial court order finding them liable to plaintiff for $5,511,759, plus interest. This amount is the balance of a compensatory damages award resulting from a combined medical malpractice, products liability action brought by plaintiff, who settled after judgment with one group of defendants.

St. John's-Fitzgerald argues: (1) the trial court's ruling is contrary to the jury verdict in the personal injury action; (2) the ruling is con-

trary to the purposes of "An Act in relation to contribution among joint tortfeasors" (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*); (3) plaintiff waived her right to joint and several liability by settling with Sterling Drug, Inc., and Breon Laboratories, Inc. (Sterling-Breon); (4) judicial estoppel precludes plaintiff from recovering the portion of the judgment attributable to Sterling-Breon from St. John's-Fitzgerald; and (5) the trial court erred in fixing the amount of post-judgment interest and determining setoff.

We reverse and remand.

Plaintiff was severely injured during birth as the result of the administration of Marcaine, an anesthetic, to her mother. Plaintiff sued St. John's-Fitzgerald alleging Fitzgerald negligently administered the drug without proper authority. She also sued Sterling-Breon for failure to properly warn about the drug and alleging a failure to contraindicate it for use in paracervical blocks prior to the time of plaintiff's injury. Sterling-Breon filed a contribution claim against St. John's-Fitzgerald, in which they alleged Fitzgerald was negligent in administering the drug. The jury returned a verdict against all defendants and assessed their *pro rata* share of the compensatory damages. It found Sterling-Breon had a 93% *pro rata* share of plaintiff's damages and St. John's-Fitzgerald a 7% share. It assessed a total of $10 million in compensatory damages, $1.5 million of which was for medical expenses. The verdict form stated:

> "We, the jury, find for the plaintiff and against the following defendants and determine their *pro rata* share of compensatory damages in the following amounts:

| | | |
|---|---|---|
| /x/ | Sterling Drug, Inc. | 46.5% |
| /x/ | Breon Laboratories, Inc. | 46.5% |
| /x/ | St. John's Hospital/ | |
| | Dr. Shari Fitzgerald | 7 % |
| | TOTAL | 100 % |

> ***
>
> | | |
> |---|---|
> | Disability | $6,000,000.00 |
> | Disfigurement | $1,000,000.00 |
> | Pain and Suffering | $1,500,000.00 |
> | Medical Expenses | $1,500,000.00" |

The jury was told to put an "x" in the box beside the name of the defendant it found liable. Subsequently, the trial court reduced the award for medical expenses to $11,759 and entered judgment against all defendants for $8,511,759. The jury also returned a verdict finding Sterling-Breon liable for $7 million in punitive damages.

Plaintiff's mother, Jane Henry, brought an individual action against all defendants, in which she alleged their actions constituted an intentional infliction of emotional distress. Jane Henry's action was dismissed on the pleadings. St. John's-Fitzgerald and Sterling-Breon appealed the jury verdict for plaintiff. Jane Henry appealed the dismissal of her individual action.

On May 19, 1987, while the appeals were pending, plaintiff filed a petition for approval of minor's settlement and for a good-faith finding pursuant to the Contribution Act. The settlement stated:

"1. In consideration of the payment as described and provided for in paragraphs 5(b) and 5(c) hereof, the sufficiency of which is hereby acknowledged, and other good and valuable consideration, the undersigned *** hereby unconditionally release, acquit and forever discharge Breon Laboratories Inc. and Sterling Drug Inc. *** of and from any and all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, controversies, costs, expenses, interest, attorneys' fees, actions or causes of actions *** including but not limited to the claims and matters set forth in the action entitled ERICA HENRY, by her mother and next friend, JANE HENRY V. ST. JOHN'S HOSPITAL, BREON LABORATORIES, INC., DR. THOMAS O'HERN, STERLING DRUG, INC., AND DR. SHARI FITZGERALD, No. 83—L—395, in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois (Judge Richard J. Cadigan presiding) ('pending action')."

Paragraph 2 provided for the release of Jane Henry's action for $350,000. Paragraph 3 of the release provided that simultaneously with and as "material consideration for the execution of this Agreement" and as a condition precedent to the payment of obligations by Sterling-Breon, counsel for plaintiff, plaintiff's mother, and Sterling-Breon would execute and file a stipulation dismissing the pending action with prejudice and vacating the judgment outstanding against Sterling-Breon.

Paragraph 5 of the agreement stated that in consideration for the release, Sterling-Breon would make a cash payment to Jane Henry and Thomas Henry in settlement of Jane's individual action. Further, a payment of $1.4 million in cash would be made to plaintiff's guardian. In addition, Sterling-Breon agreed to purchase an annuity from an insurance company for $1.6 million. The agreement specifically stated plaintiff and her parents intended to pursue their claim against St. John's-Fitzgerald. Plaintiff and her parents agreed to indemnify

Sterling-Breon from any claims brought by St. John's-Fitzgerald on any theory including contribution. The agreement further provided that if plaintiff or her parents succeeded in recovering any monies from St. John's-Fitzgerald, the money would be placed in an escrow account until St. John's-Fitzgerald had exhausted all attempts to recover any amount from Sterling-Breon. If St. John's-Fitzgerald received a judgment against Sterling-Breon, the escrow account would be applied to the obligation.

St. John's-Fitzgerald filed objections to the settlement. However, on May 27, 1987, the trial court found the settlement was in good faith. St. John's-Fitzgerald filed a notice of appeal from the good-faith finding and dismissal of plaintiff's action against Sterling-Breon. This court dismissed St. John's-Fitzgerald's appeal as not based upon a final order. On July 8, 1987, this court dismissed Sterling-Breon's original appeal. On July 13, 1987, the trial court dismissed Sterling-Breon from plaintiff's action and vacated the judgment against them. The trial court entered the following order:

> "The Court having been advised by counsel for plaintiffs and for defendants Breon-Laboratories Inc. and Sterling Drug Inc. that this action has been settled as between the aforesaid parties, and this Court having reviewed the terms and condition of the Release and Settlement Agreement and the stipulation of dismissal;
>
> It is, therefore, ordered that the within action be and the same hereby is dismissed as against defendants Breon Laboratories Inc., Sterling Drug Inc. and other divisions, subsidiaries and affiliates thereof with prejudice and on the merits and the judgment entered in this action against Breon Laboratories and Sterling Drug Inc. be and the same hereby is vacated."

Plaintiff stipulated to the dismissal of Sterling-Breon from the lawsuit and the vacation of the judgment against them. They stated:

> "It is hereby stipulated and agreed by and between the undersigned counsel for Breon Laboratories Inc. and Sterling Drug Inc., and for Jane Henry, individually and on behalf of Erica Henry, that Breon Laboratories Inc. and Sterling Drug Inc. and all other divisions, subsidiaries and affiliates thereof are hereby dismissed from the above-captioned lawsuit with prejudice and on the merits. It is further hereby stipulated and agreed that the judgment against Sterling Drug Inc. and Breon Laboratories Inc. shall be vacated by order of the Court in the form annexed hereto."

In *Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 725, 512

N.E.2d 1044, this court affirmed the jury's findings as to St. John's-Fitzgerald.

On March 11, 1988, plaintiff filed a citation to discover St. John's Hospital's assets. On April 4, 1988, St. John's-Fitzgerald tendered a check for $715,559.09 to plaintiff. This represented the 7% amount plus interest to that date. On May 6, 1988, St. John's-Fitzgerald filed a petition for entry of judgment on the jury verdict. Plaintiff objected.

After a hearing, on July 8, 1988, the trial court denied St. John's-Fitzgerald's motion, and found they were jointly and severally liable for the verdict as of January 21, 1986. The court stated interest accrued as of that date. The court further found that after the settlement, the amount of recovery was reduced by $3,350,000. St. John's-Fitzgerald was liable to plaintiff for $5,511,759 plus interest accrued to May 29, 1988 ($1,528,743), and accruing thereafter at a rate of $1,359 per day. The court stated the amount given to Jane Henry for settlement of her individual claim was not a setoff against the amount of the judgment due on plaintiff's claim.

In the instant case, St. John's-Fitzgerald initially argues the imposition of the balance of the compensatory damage award against it is contrary to the jury verdict, contrary to the language of this court, contrary to the equitable principles behind the Contribution Act, and in effect, allows plaintiff to change the jury's assessment of relative degrees of fault. St. John's-Fitzgerald next argues that the settlement, if it allows for a post-judgment shifting of responsibilities, is not in good faith.

Plaintiff contends St. John's-Fitzgerald is, in essence, contesting joint and several liability, which has been upheld in courts in Illinois. Plaintiff argues St. John's-Fitzgerald's remedy should have been a timely contribution claim against Sterling-Breon. Secondly, plaintiff contends St. John's-Fitzgerald cannot contest good faith at this time.

Section 2(a) of the Contribution Act provides that where two or more persons are subject to liability in tort to the same person arising out of the same injury, there is a right of contribution among them. (Ill. Rev. Stat. 1987, ch. 70, par. 302(a).) Section 2(b) of the Contribution Act states contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability. The tortfeasor's total recovery is limited by the amount he pays in excess of his share. Ill. Rev. Stat. 1987, ch. 70, par. 302(b).

Section 2(c) of the Contribution Act states:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death,

it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Ill. Rev. Stat. 1987, ch. 70, par. 302(c).)

The Contribution Act further provides that a tortfeasor who settles pursuant to section 2(c) is discharged from all liability for contribution and precluded from seeking contribution from a nonsettling tortfeasor. (Ill. Rev. Stat. 1987, ch. 70, pars. 302(d), (e).) Section 4 of the Contribution Act states:

"Rights of Plaintiff Unaffected. A plaintiff's right to recover the full amount of his judgment from any one or more defendants subject to liability in tort for the same injury to person or property, or for wrongful death, is not affected by the provisions of this Act." Ill. Rev. Stat. 1987, ch. 70 par. 304.

The function of the court in construing statutes is to ascertain and give effect to the intention of the legislature in enacting the statute. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266, 472 N.E.2d 431, 432.) In ascertaining intent, the court will look at the entire statute. It will not interpret the statute in a fashion which would render portions of it void. The court presumes the General Assembly did not intend absurdity, injustice, or inconvenience. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 489 N.E.2d 1374.) The language of a statute will be given its ordinary meaning.

The Contribution Act has two major purposes. It encourages settlements and it provides for contribution among joint tortfeasors. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) The Contribution Act codifies and expands principles first stated in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1978), 70 Ill. 2d 1, 13, 374 N.E.2d 437, 442. The *Skinner* court stated that it saw no valid reason for the continuation of a rule prohibiting contribution among joint tortfeasors. It noted with approval statements by Dean Prosser in which he stated there was an obvious lack of justice in a rule which permits the entire burden of a loss to be shouldered by one tortfeasor based upon plaintiff's whim, spite, or collusion or a successful levy of execution. *Skinner*, 70 Ill. 2d at 13, 374 N.E.2d at 442, citing W. Prosser, Torts §50, at 307 (4th ed. 1971).

The purpose of the Contribution Act in eliminating inequity between joint tortfeasors is further established by the legislative history of the Act. Senator Berman in discussing the statute noted its purpose was to bring equity to an otherwise inequitable situation. It al-

lowed everyone to participate according to their fault in any accident. (81st Ill. Gen. Assem., Senate Proceedings, May 14, 1979, at 175-76 (statements of Senator Berman) (Senate Bill 308).) Representative Daniels stated the bill allowed for contribution of monetary damages by people that are responsible for a negligent action. Those people would normally be joined in the lawsuit; however, Daniels noted that under the current law when a judgment was rendered it was rendered against all of them and not spread out in exact and precise amounts. Daniels stated:

> "What this Bill does is allow for the contribution between responsible parties as to varying degrees of the judgment action or how much they may owe. It's a codification of the Skinner versus Reed decision out of the Illinois Supreme Court, and it adds other provisions which we think will make it more beneficial for current law." 81st Ill. Gen. Assem., House Proceedings, June 14, 1979, at 18 (statements of Representative Daniels) (Senate Bill 308).

■ At common law, all joint tortfeasors were jointly and severally liable for the whole of plaintiff's damages. Plaintiff could elect who he would recover from. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) A release of one joint tortfeasor at common law released all joint tortfeasors. (See generally *Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.* (1982), 105 Ill. App. 3d 671, 434 N.E.2d 365.) The rationale behind the rule was that only one recovery could be had for a single injury. See *Clear-Vu,* 105 Ill. App. 3d 671, 434 N.E.2d 365, citing *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132.

In *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 200-01, 461 N.E.2d 361, 363-64, the court stated that one of the purposes behind the Contribution Act was to eliminate the rule that the release of one joint tortfeasor released all. The court noted that it believed the legislature intended that a release pursuant to section 2(c) of the Contribution Act would not discharge joint tortfeasors from liability to the plaintiff unless they were specifically named in the release. Implicit in the *Alsup* court's analysis of section 2(c) of the Contribution Act is that a plaintiff's settlement affects his rights to recover damages from the nonsettling tortfeasors.

■ The Contribution Act also distributes the loss among the joint tortfeasors for plaintiff's injury. As a predicate to application of the Contribution Act, the defendants must be jointly liable to the plaintiff for the same injury. (Ill. Rev. Stat. 1987, ch. 70, par. 302(a).) The Contribution Act states that the plaintiff's right to recover the full

amount of his judgment from any one or more of the defendants subject to liability in tort is not affected by the Act. Ill. Rev. Stat. 1987, ch. 70, par. 304.

In *Coney*, the court held that the doctrine of joint and several liability for a plaintiff's injury was not eliminated by the adoption of comparative negligence. The court noted the language of section 4 of the Contribution Act and the language of section 3 of the Contribution Act as support for its view that the legislature intended to retain joint and several liability. Joint and several liability for many injuries has been eliminated by statute in Illinois. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1117.) The effect of this statutory change on the Contribution Act has not been litigated. The statutory changes, however, occurred after accrual of the instant case and, therefore, would not be relevant to this appeal.

We have found no Illinois cases addressing post-judgment settlements pursuant to the Contribution Act. In the instant case, plaintiff settled her compensatory damages claim against Sterling-Breon after judgment. The value of the compensatory damages claim against Sterling Breon was 93% of the $8,511,497 award at the time of the settlement. Additionally, a punitive damages award was vacated. Since the release provided that the entire liability of Sterling-Breon was extinguished and referenced a specific cause number in which liability was fixed by judgment, plaintiff's recovery should be reduced by the full proportional liability of Sterling-Breon.

"Amount" is defined as "[t]he whole effect, substance, import, result, or significance. The sum of principal and interest." (Black's Law Dictionary 76 (5th ed. 1979).) It is logical that an amount can be stated numerically or by the use of terms such as "all liability," "entire claim," "all claim," and "partial liability." A "claim" is defined as a cause of action, demand for money, payment, or right to payment, whether or not liquidated or reduced to judgment. Black's Law Dictionary 224 (5th ed. 1979).

■ We agree that the comparative negligence concepts and the Contribution Act do not affect a plaintiff's "right" to hold defendants jointly and severally liable for his injuries. However, after a plaintiff has reduced liability to judgment by jury verdict to an amount certain and elects to settle with a tortfeasor who is financially capable of satisfying the entire judgment, he waives his right to enforce that portion of the judgment against the nonsettling tortfeasor.

Interpreting the release in the instant case to reduce the plaintiff's recovery by the damages already assessed against Sterling-Breon in the trial action comports with the purpose of the Contribu-

tion Act. The dollar amount of the released claim is established here and the release specifically includes a release of any claim under the cause of action establishing the judgment amount. If the amount of the claim were not readily determinable, as in a prejudgment settlement, the dollar amount stated in the release would control.

In *Coney*, the court held comparative negligence did not require abandonment of joint and several liability, especially where a nonnegligent plaintiff is involved. The court noted protection of plaintiffs as a primary reason for retaining the doctrine after abrogation of the doctrine of contributory negligence. It stated one indivisible injury was involved, and as between an innocent plaintiff and a negligent but insolvent joint tortfeasor, abandonment of joint and several liability would force plaintiff to bear the loss. The court was concerned that elimination of joint and several liability would seriously impair and injure plaintiff's ability to recover adequate compensation for his injuries. (*Coney*, 97 Ill. 2d at 121-22, 454 N.E.2d at 205.) The effect of *Coney*, has been partially overruled by section 2—1118 of the Illinois Code of Civil Procedure, which provides for joint and several liability in cases where a defendant's negligence is 25% or less than that assessed to the other parties including the plaintiff. Ill. Rev. Stat. 1987, ch. 110, par. 2—1118.

Section 4 of the Contribution Act specifically states a plaintiff's "rights" to recover the full amount of his judgment from one or more of the defendants is not affected by the provisions of the Contribution Act. (Ill. Rev. Stat. 1987, ch. 70, par. 304.) Several States retain joint and several liability, some have legislatively restructured or eliminated it, and some have judicially eliminated the doctrine. See *Walt Disney World Co. v. Wood* (Fla. 1987), 515 So. 2d 198, for a discussion of the treatment of joint and several liability by the various States.

Few States have addressed a situation similar to that presented in the instant case. Among those that have, however, one State has held that apportionment of judgment applies to limit the judgment when there is an active assertion of a claim against a joint tortfeasor. (*Prudential Life Insurance Co. v. Moody* (Ky. 1985), 696 S.W.2d 503.) In *Bartels v. City of Williston* (N.D. 1979), 276 N.W.2d 113, the court held that Bartels, who settled with a joint tortfeasor and released him, waived his right to hold the remaining defendants jointly and severally liable for the entire amount of the award. The *Bartels* court analyzed the laws of Wisconsin and Minnesota in construing the effect of a release of liability. It held that the judgment award should be reduced by the proportionate liability of the person who settled.

A waiver occurs when a party intentionally relinquishes a

known right, either expressly or by conduct inconsistent with an intent to enforce the right. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 492 N.E.2d 1284; *Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 994; *Harris v. Faultfinders, Inc.* (1981), 103 Ill. App. 3d 785, 431 N.E.2d 1205.) Waiver is an equitable doctrine invoked to further the interests of justice whenever a party initially relinquishes a known right. *Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 368 N.E.2d 465.

■ Here, the judgment as to Sterling-Breon was vacated by the court pursuant to the stipulation of plaintiff and Sterling-Breon. By entering the settlement and release, plaintiff gave up her known right to enforce that part of the verdict attributable to Sterling-Breon against the nonsettling defendants.

In *Bartels*, the court found that joint and several liability as stated in its statute existed to benefit the injured party and could be waived. Bartels gave a general release to a joint tortfeasor, which released the tortfeasor from any contribution action. The *Bartels* court stated:

"We also conclude that the following language in §9—10—07, NDCC, 'provided, however, that each shall remain jointly and severally liable for the whole award' is for the benefit of the injured party and can be waived.

The general release given to Hackney constituted a general release for all of his liabilities present and future, including contributions either specifically or by construction, and as a settling tort-feasor he is excluded as a party from any further action against any of the remaining nonsettling tort-feasors. Bartels' (plaintiff's) recovery from the nonsettling tort-feasors is limited to the percentage of negligence attributable to the remaining nonsettling tort-feasors as may be determined by the court or the jury, as the case may be.

In this instance, John Bartels, the plaintiff, through the release, waived the following underscored language of §9—10—07, NDCC:

'When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of the negligence attributable to each; *provided, however, that each shall remain jointly and severally liable for the whole award.*' " (Emphasis added by *Bartels* court.) (*Bartels*, 276 N.W.2d at 122.)

Section 4 of the Contribution Act provides for the retention of joint and several liability, which is a right benefitting the plaintiff. We find

the right to jointly and severally enforce judgment under the Contribution Act is waived by a plaintiff who acts to cause vacatur of a judgment as to a primarily liable joint tortfeasor pursuant to a settlement.

St. John's-Fitzgerald next argues that principles of judicial estoppel should apply in the instant case to preclude plaintiff from assuming a different position than she held in the trial court. The doctrine of judicial estoppel states that when a party assumes one position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding. (*Department of Transportation v. Coe* (1983), 112 Ill. App. 3d 506, 509-10, 445 N.E.2d 506, 507-08.) This doctrine is inapplicable in the instant case, which involves supplemental proceedings.

St. John's-Fitzgerald next argues the trial court erred in assessing post-judgment interest. In light of our finding that the release reduced plaintiff's recovery by the amount of the compensatory damages award recoverable against Sterling-Breon, we agree. We need not address St. John's-Fitzgerald's contentions. We note, however, that the record does not support St. John's-Fitzgerald's argument concerning setoff. Jane Henry filed a separate lawsuit against St. John's-Fitzgerald and Sterling-Breon. The appeal of the dismissal of that suit was pending at the time of the settlement, which clearly delineated the two lawsuits involved. Jane Henry's settlement was distinct from plaintiff's settlement. No setoff would, thus, be available in plaintiff's action.

For the above reasons, we reverse and remand.

Reversed and remanded.

SPITZ, J., concurs.

JUSTICE GREEN, dissenting:

I agree with the majority in their well-expressed statement of the purposes of the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302(a)). I also share their concern which arises because the judgment on appeal is not consistent with the purposes of the Contribution Act. However, I must dissent from decision of the majority because in attempting to be fair to St. John's-Fitzgerald and consistent with the purposes of the Contribution Act, the decision (1) is unfair to plaintiff; (2) violates the express terms of the Contribution Act; and (3) is contrary to precedent binding upon us.

The majority treat the act of plaintiff in settling with Sterling-

Breon after judgment and pending appeal as a waiver of any liability owed by St. John's-Fitzgerald beyond 7% of the amount of the joint and several judgment entered on the jury verdict for compensatory damages as modified by the circuit court. The majority correctly points out that section 2(c) of the Contribution Act states that "[w]hen a release *** is given in good faith to one [joint tortfeasor], it does not discharge any of the other tortfeasors" unless so stated but reduces recovery against others by the amount paid. (Ill. Rev. Stat. 1987, ch. 70, par. 302(c).) The majority does not maintain the settlement was not in good faith nor does the majority take the position that the settlement fully released St. John's-Fitzgerald, as would have been the case prior to the Contribution Act, and might well be the case if the settlement was not in good faith.

Rather, the majority relies on the cases of *Bartels v. City of Williston* (N.D. 1979), 276 N.W.2d 113, and *Prudential Life Insurance Co. v. Moody* (Ky. 1985), 696 S.W.2d 503, in support of their theory. The *Bartels* court construed a statute concerning contribution, very similar to ours, in the context of a statute on comparative negligence which provided in tort cases for the jury to render separate verdicts as to each defendant, fixing damages in proportion to the fault of that defendant, but also stated the liability of the defendants was joint and several. The court concluded that based upon the construction given to the comparative negligence statute by the State from which it was adopted, in cases where one of the tortfeasors has settled with the plaintiff, the amount of judgment eventually awarded is reduced, not by the amount of the settlement but by the percentage of fault found by the trier of fact to be attributable to the settling tortfeasor. That rule was held to prevail over a provision in the legislation regarding compensation which stated, as does section 2(c) of the Contribution Act, that the judgment is reduced by the amount obtained from the release. *Prudential* concerned the operation of a comparative negligence statute which limited joint liability of joint tortfeasors to that for costs.

Subject to the provisions of sections 2—1116, 2—1117, and 2—1118 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1116, 2—1117, 2—1118), which were not in force at times pertinent here and would not be applicable to these facts, the statutory format in Illinois is to spread fault in most tort cases proportionately among tortfeasors indirectly through third-party action and cross-complaints under the Contribution Act rather than through directly apportioning the liability of each tortfeasor to the injured party. All tortfeasors remain jointly and severally liable to the injured party. (*Coney v. J.L.G.*

*Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) There is no statutory provision or common law rule similar to that in *Bartels* whereby the proportion of liability of each defendant to the plaintiff is directly determined.

The Contribution Act, indirectly, achieves ultimate proportionate responsibility unless a joint tortfeasor is insolvent. The post-judgment settlement pending appeal is not what destroyed proportionality here. The majority does not dispute that plaintiff could have sought satisfaction of its entire judgment for compensatory damages from St. John's-Fitzgerald and the latter could not have prevented them from doing so nor could St. John's-Fitzgerald have obtained any contribution from Sterling-Breon. Proportionate ultimate financial responsibility was defeated here because, unfortunately, St. John's-Fitzgerald failed to file a timely claim for contribution. In late 1984, the supreme court held in *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939, that if a tort action is brought, alleged tortfeasors seeking contribution from others must join their claims for contribution in the tort action. This was not always done previously. In the short time span involved here, filing a claim for contribution was overlooked by St. John's-Fitzgerald until after the evidence had been presented in the trial on the merits and the circuit court ruled the request was untimely and denied it. Had St. John's-Fitzgerald timely made such a claim, it could have required Sterling-Breon to reimburse it to the extent St. John's-Fitzgerald had paid plaintiff more than St. John's-Fitzgerald's proportionate share of the joint and several judgment.

St. John's-Fitzgerald rightfully calls our attention to the confusion and ambiguity in the record here. The form of the verdict could be taken to indicate that separate judgments in separate amounts were being entered as to the several defendants. In our opinion, modified upon denial of petition for rehearing in the underlying case, we concluded with the following statement:

> "Therefore, we affirm the jury verdict less the court-ordered remittitur as to medical expenses and affirm St. John's-Fitzgerald's responsibility for 7% thereof." (*Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 725, 735, 512 N.E.2d 1044, 1050.)

This also could be taken to indicate we affirmed the judgment against St. John's-Fitzgerald only to the extent of 7% of the amount of the compensatory damages. However, despite the foregoing, in view of the undisputed continued existence of the rule of joint and several liability as applied to the situation here, where there was no contention of negligence attributable to plaintiff, the foregoing can only be con-

strued to consist of the award of a joint and several judgment for the compensatory damages as modified and an affirmance of the same. Sterling-Breon had filed cross-complaints against St. John's-Fitzgerald for contribution, and the fixing of degrees of fault among the various defendants can be attributed to those claims.

In summary, I conclude: (1) under common law precedent, the liability of all defendants to plaintiff was joint and several and she could look to any one of them for satisfaction of the judgment rendered; (2) under section 2(c) of the Contribution Act, any good-faith settlement with one or more of the defendants reduces the liability of other defendants to her only in the amount of the settlement; (3) neither statute nor case law precedent changes the operation of the foregoing principles because the settlement was made pending appeal from an existing judgment; and (4) any fairness to St. John's-Fitzgerald, awarded them by the majority because of their unfortunate predicament, results in corresponding unfairness to plaintiff, who was entitled to rely on existing law in settling with Sterling-Breon. Accordingly, I would affirm the judgment of the circuit court.