**Gregory GLASS, Plaintiff,**

v.

**KEMPER CORPORATION, The Prime Group, Inc., Prime International, Inc., Steven Timbers, John Neal, and Michael Oberst, Defendants.**

No. 95 C 3178.

United States District Court,
N.D. Illinois,
Eastern Division.

April 1, 1996.

---

P.C., Chicago, Illinois, for Kemper and Timbers.

Robert N. Hermes, Butler, Rubin, Saltarelli & Boyd, Chicago, Illinois, for The Prime Group and Prime Int'l, Inc.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are the defendants Kemper Corporation's ("Kemper"), The Prime Group, Inc.'s ("Prime"), Prime International, Inc.'s ("PII"), Stephen Timbers' ("Timbers"), and John Neal's ("Neal") (collectively, "defendants") motions to dismiss Count VI of plaintiff Gregory Glass's ("Glass") first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court grants defendants' motions to dismiss Count VI of Glass's first amended complaint.

### I. BACKGROUND [1]

Some time in the early 1990s, Kemper, Prime, and PII, all Illinois corporations with their principal places of business in Illinois, began a project to develop the Diagonal Mar shopping mall in Barcelona, Spain. In November 1992, Prime and PII hired Glass to manage the Diagonal Mar project. Glass, now a Wisconsin resident and a Georgia resident prior to beginning work for Prime and PII, moved to Barcelona and performed all of his work on Diagonal Mar in Barcelona.

In May 1994, Kemper gained control of Prime, PII, and the other subsidiaries, divisions, and affiliates related to Diagonal Mar. Oberst, a vice president of Kemper and managing director of Kepro, which held title to the Diagonal Mar property, told Glass that Glass now worked for Kemper. From May 1994 through October 1994, Oberst and Glass negotiated Glass's employment contract with Kemper. Oberst made repeated representations to Glass that Glass now worked for Kemper; that he would be paid the equivalent of $400,000 per year; that he would be employed until the project was completed, or through March 31, 1995, if Kemper chose to terminate the project; that if Kemper ended the project, Glass would receive a minimum of a $200,000 severance package; that if

Alan Jay Mandel, Chicago, Illinois, for Plaintiff.

Bennett L. Epstein, John Friedrich Zabriskie, Diane E. Gianos, Hopkins & Sutter,

---

1. The facts are taken from Glass's first amended complaint.

Kemper proceeded with Diagonal Mar, Glass would receive annual bonuses of up to $200,-000 and equity participation in the project; that if Glass sold his Atlanta home and resided full-time in Spain, Kemper would pay all brokers' fees and closing costs; and that Glass must devote all of his time and attention to Diagonal Mar.

Glass withdrew from all other projects and sold his Atlanta home. In September 1994, Glass received a memorandum outlining the employment agreement between Kemper and Glass and accepted the employment terms.

On October 20, 1994, Kemper, through Oberst, terminated Glass's employment, effective November 20, 1994. Oberst stated that the terms of Glass's termination were pursuant to a 1992 services agreement between Prime and Kepro, and that the September 1994 offer was withdrawn.

Glass filed a six-count cause of action, which he subsequently amended, against defendants, making allegations of fraud, breach of contract, promissory estoppel, equitable estoppel, unjust enrichment, and violation of the Illinois Wage Payment and Collection Act. Defendants now move to dismiss Count VI of Glass's first amended complaint, alleging violation of the Illinois Wage Payment and Collection Act.[2]

## II. DISCUSSION

### A. Standard for motion to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport*, 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dis-

miss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. Analysis of Wage Payment and Collection Act

In Count VI of his first amended complaint, Glass seeks recovery of unpaid wages pursuant to the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/1–115/16. Specifically, Glass seeks in excess of $700,000 for lost salary, lost bonus opportunities, severance pay, and damages associated with the closing costs of his Atlanta home.

The Wage Act provides a means for employees to collect wages due them. *See generally* 815 ILCS 115/4–115/6. It applies "to all employers and employees in this State, including employees of units of local governments and school districts, but excepting employees of the State or Federal governments." 815 ILCS 115/1. Defendants base their motion to dismiss on this provision. They argue that the Wage Act applies only to employers and employees in Illinois, and does not apply to employees working outside the state of Illinois. Therefore, it does not apply to Glass, who never was an Illinois resident and did all of his work outside of Illinois. Glass counters that the Wage Act applies to Illinois employers and is meant to prevent them from depriving their employees of wages. Therefore, because defendants are residents of Illinois, the Wage Act covers their conduct towards Glass and provides Glass a remedy to recover his wages.

Unfortunately, neither the Illinois legislature nor the Illinois judiciary has answered the question whether the Wage Act applies to non-resident employees performing their work outside of Illinois. The legislature did not define "employee" in the act, and failed to provide any explanation of where the employee must reside or work to be able to

**2.** Kemper, Prime, PII, and Timbers filed a motion to dismiss. Neal filed a separate motion, but adopted in entirety the other defendants' motion and joined in their reply brief. Defen-

dant Michael Oberst does not join in defendants' motions, although Count VI is against him, as well.

invoke the Wage Act. Furthermore, no Illinois court has interpreted section 115/1 of the act. The court finds it surprising that the issue now before it is an issue of first impression, but apparently it is. Thus, the only guidance this court has is the language of the statute, the regulations under it, and analogy to other states' wage laws.

### 1. *Language of the Wage Act*

■ Section 115/1 states that the Wage Act "applies to all employers and employees in this State...." 820 ILCS 115/1. Two nouns connected by "and" form a compound group, such as a compound subject or object of a sentence. JOHN B. OPDYCKE, HARPER'S ENGLISH GRAMMAR 203, 226 (1965). In the present case, "employers and employees" is the compound object of the preposition "to." *See id.* at 42. "[I]n this state" is a prepositional phrase that acts as the adverb modifying "employers and employees." *See id.*

In plain, grammatically correct English, then, the Wage Act applies to a group consisting of employers and employees, all of whom are in Illinois. Thus, the language of section 115/1 indicates that an employee must be in Illinois to be able to invoke the Wage Act.

Glass argues, however, that the statute expressly offers protection to any employees working for Illinois employers, as well as Illinois employees working for out-of-state employers. The court fails to see how Glass derives this meaning from the language of the statute. His interpretation would require "or" between "employers" and "employees." That is, for the Wage Act to apply, *either* the employer *or* the employee must be in Illinois, but *both* the employer *and* the employee need not be in Illinois. As section 115/1 is written, it simply cannot support that interpretation.

Glass contends that section 115/7 of the Wage Act supports his interpretation. This provision authorizes the Illinois Department of Labor to "enter into agreements with other states to collect unpaid wages from out-of-state employers and to perform reciprocal services for such states in the State of Illinois." 820 ILCS 115/7. Glass contends that defendants' reading of the Wage Act contradicts and obviates this reciprocity provision. According to Glass, under defendants' interpretation, Illinois would have no need to enter into agreements with other states to help collect the unpaid wages of employees living in those other states from Illinois employers if the Wage Act did not apply to protect those out-of-state employees.

■ The court finds the converse. If the Wage Act automatically covered out-of-state employees working for Illinois employers, there would be no need for the reciprocity for which section 115/7 provides. Out-of-state employees could invoke the Wage Act to recover their wages owed by Illinois employers without assistance from the state of Illinois. Thus, Glass's reading of section 115/1 would render section 115/7 meaningless, violating the rule of statutory construction that the court must look at an entire statute and not interpret the statute in a manner that would render portions of it invalid. *See Henry v. St. John's Hospital,* 180 Ill.App.3d 558, 565, 129 Ill.Dec. 537, 541, 536 N.E.2d 221, 225 (4th Dist.1989), *rev'd on other grounds,* 138 Ill.2d 533, 150 Ill.Dec. 523, 563 N.E.2d 410 (1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991); *Snyder v. Olmstead,* 261 Ill.App.3d 986, 989–90, 199 Ill.Dec. 703, 708, 634 N.E.2d 756, 761 (3d Dist.1994); *Kaszubowski v. Board of Educ.,* 248 Ill.App.3d 451, 457–58, 188 Ill.Dec. 39, 43, 618 N.E.2d 609, 613 (5th Dist.1993).

Furthermore, Glass's interpretation of section 115/1 undermines his response to defendants' argument that the Wage Act cannot apply to an out-of-state employee because an Illinois statute has no extraterritorial force and is operative only as to persons or things within Illinois. *See Wimmer v. Koenigseder,* 108 Ill.2d 435, 441, 92 Ill.Dec. 233, 236–37, 484 N.E.2d 1088, 1091–92 (1985) (other citations omitted); *Summar v. Indiana Harbor Belt Railroad Co.,* 147 Ill.App.3d 851, 857, 113 Ill.Dec. 321, 324, 515 N.E.2d 130, 133 (1st Dist.1986). Glass responds that he is not seeking extraterritorial enforcement of a statute, but merely is seeking to enforce an Illinois statute against Illinois citizens—defendants. However, under Glass's interpre-

tation of section 115/1, the Wage Act presumably would apply to out-of-state employers employing Illinois employees. It seems that applying the Wage Act in this manner would constitute extraterritorial enforcement of an Illinois statute. Thus, Glass's interpretation of section 115/1 is logically inconsistent with his argument supporting his interpretation.

Accordingly, the court finds that the language of the Wage Act indicates that the act is intended to apply only to Illinois employees working for Illinois employers.

### 2. *Regulations under the Wage Act*

Both Glass and defendants argue that section 300.440 of the regulations under the Wage Act supports their respective interpretations of the Wage Act. Section 300.440 states:

> The Department [of Labor] will assist an individual in his/her claim for wages or final compensation when:
>
> . . . .
>
> b) The claim concerns work performed outside the State of Illinois if the specified employer is located within Illinois or the contract for hire was entered into in this State, *but not when the claim is filed by an employee whose permanent work was outside the State of Illinois and who performed a substantial portion of his/her duties outside Illinois.*

Ill.Admin.Code Tit. 56 § 300.440 (emphasis added).

Defendants contend that this provision supports their contention that the Wage Act is not meant to be applied extraterritorially, and that Illinois has no interest in regulating the alleged failure to pay wages earned by an employee neither living nor working in Illinois. Glass counters that this regulation simply allocates the Department of Labor's limited resources and limits an out-of-state employee's remedies to his private right of action, without department assistance. He contends that this regulation proves that the Wage Act itself allows an out-of-state employee to sue his Illinois employer by a private right of action.

The court finds that in the absence of other guidance from the Illinois legislature,

Department of Labor, or courts, section 300.440 can mean what the defendants say it means, or it can mean what Glass says it means. In short, it is not conclusive as to either argument, and does not serve to persuade the court that one interpretation is more correct than the other.

### 3. *Other States' Wage Laws*

Because several states have provided more guidance on their wage acts than Illinois has, those states' wage acts and decisions interpreting the acts serve to illuminate the meaning of Illinois' Wage Act.

Indiana's Wage Payment Statute provides: "Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, *doing business in Indiana,* shall pay *each employee* at least semimonthly or biweekly, if requested, the amount due the employee." IND.CODE § 22–2–5–1(a) (emphasis added). Interpreting this provision, Indiana's court of appeals stated:

> In examining a statute, we presume that words appearing in a statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. . . . The Wage Payment Statute does not impose any restriction on the employee but instead the plain language of the statute dictates that the applicability of the Wage Payment Statute rests solely upon whether the employer is doing business in Indiana.

*Huff v. Biomet, Inc.,* 654 N.E.2d 830, 834–35 (Ind.Ct.App.1995) (citations omitted). The court found that because Biomet was a corporation doing business in Indiana, it was subject to the Wage Payment Statute, even though plaintiff was a Texas resident and did all of his work in Texas. *Id.* at 832, 835.

The Indiana wage statute explicitly limits employers covered by the statute to those in Indiana, but does not so limit employees. In contrast, the Illinois Wage Act, by its language, limits employers and employees under the Wage Act to those in Illinois. *See* 820 ILCS 115/1. Thus, the Indiana statute is an example of how Illinois could have worded

the Wage Act if it had wanted to include out-of-state employees within its purview.

In contrast to the Indiana statute, Pennsylvania's Wage Payment and Collection Law ("Wage Payment Law") does not define "employee" but defines "employer" as any entity or agent or officer of an entity employing any person in Pennsylvania. *See Killian v. McCulloch*, 873 F.Supp. 938, 941 (E.D.Pa. 1995). In *Killian*, the defendants argued that the Wage Payment Law applied only to employment occurring in Pennsylvania, and because plaintiffs were never based in Pennsylvania and were not Pennsylvania residents, they could not bring a claim under the statute. *Id.* The court agreed.

Noting that there was "scant legislative history" to guide it, the court looked at prior federal and state decisions that stated that the Wage Payment Law's purpose was to offer protection to workers to whom wages were owed. *Id.* at 942. The court rejected plaintiffs' argument that the Wage Payment Law was enacted to regulate the conduct of employers who employ persons within Pennsylvania. *Id.* It stated that the language of the cases reflected the "clear consensus" that Pennsylvania's legislature enacted the Wage Payment Law to protect employees. *Id.* The court then stated:

> The legislature has a strong interest in enacting legislation to protect those who work in the Commonwealth but has almost no interest in extending that protection to those who work outside Pennsylvania. And while the statute assuredly has the effect of deterring wrongful behavior on the part of employers, its primary aim is to ensure that those who are employed in Pennsylvania receive compensation for their work. This conclusion is buttressed by the fact that the plaintiffs have not pointed to a single case, and our research has not uncovered one, in which an out-of-state employee has brought a [Wage Payment Law] claim in a Pennsylvania court.

*Id.* The court thus held that the protections of the Wage Payment Law extended only to employees based in Pennsylvania. *Id.*

■ *Killian's* rationale applies equally to Illinois' Wage Act. As with the Pennsylvania wage law, federal and state courts have stated that the Illinois Wage Act is intended to protect employees. *See In re Faber*, 52 B.R. 563, 565 (Bankr.N.D.Ill.1985) (Wage Act "sets forth a mechanism for nongovernmental employees of the State of Illinois to recover the payment of wages due from their employers"); *Miller v. J.M. Jones Co.*, 198 Ill.App.3d 151, 152, 144 Ill.Dec. 461, 462, 555 N.E.2d 820, 821 (4th Dist.1990) ("A reading of the entire [Wage] Act clearly shows that the purpose of the Act is to assist employees in seeking redress for an employer's wrongful withholding of employee benefits"); *Stafford v. Purofied Down Products Corp.*, 801 F.Supp. 130, 139 (N.D.Ill.1992) (private right of action under Wage Act protects employee's interest in personal property). These cases belie Glass's argument that the Wage Act is intended to deter employers from withholding employees' wages. While deterrence may be a desired side effect, the Wage Act clearly is intended to provide a remedy to employees wrongfully deprived of their wages.

■ "When the terms of a statute are not specifically defined, the words must be given their ordinary and popularly understood meanings, ... but the words must also be construed with reference to the purposes and objectives of the statute." *Niven v. Siqueira*, 109 Ill.2d 357, 366, 94 Ill.Dec. 60, 65, 487 N.E.2d 937, 942 (1985) (citations omitted). It is clear that the purpose of the Wage Act is to offer protection to employees to whom wages are owed. While Illinois certainly has a strong interest in protecting Illinois employees, the citizens who work and live within the state, it has little interest in extending that protection to those who work outside of Illinois. As the *Killian* court noted, this conclusion is buttressed by the fact that the parties have not cited, and this court has not found, any cases involving an out-of-state employee seeking protection under the Wage Act.

Accordingly, the court finds that analogy to Indiana's and Pennsylvania's wage laws supports defendants' interpretation and contravenes Glass's interpretation of Illinois' Wage Act.

## C. *Summary*

The court finds that the language of the Wage Act and analogy to Indiana's and Pennsylvania's wage laws dictate that the Wage Act does not apply to employees neither living nor working in Illinois. Therefore, Glass cannot invoke the Wage Act's protections and remedies.

The court is aware that this interpretation of the Wage Act leaves Glass with no remedy under the Wage Act. However, the court notes that Glass still may recover the wages allegedly due him if he prevails on his other counts.

## III. *CONCLUSION*

For the foregoing reasons, the court grants defendants Kemper Corporation's, The Prime Group, Inc.'s, Prime International, Inc.'s, Stephen Timbers', and John Neal's motions to dismiss Count VI of plaintiff Gregory Glass's first amended complaint, and dismisses Count VI from the first amended complaint. Because Count VI is the only count alleged against defendants Stephen Timbers and John Neal, defendants Stephen Timbers and John Neal are dismissed as party defendants.