Mary Flannery et al., Appellants, v. James P. Flannery, Appellee.

422

Opinion filed October 30, 1943.

JOHNSON & JOHNSON, of Belleville, for appellants.

Jos. B. McGLYNN, of East St. Louis, for appellee; W. E. CORRIGAN, of Chicago, of counsel.

MR. JUSTICE STONE delivered the opinion of the court.

Mary Flannery, Abbott Flannery, Vincent Flannery, Viola A. Flannery, administratrix of the estate of Charles Flannery, deceased, and Jerome Flannery, appellants who will hereinafter be designated as plaintiffs filed suit in equity against James P. Flannery, appellee, who will be hereinafter designated as defendant, for a determination of the interest of the parties in the copartnership of P. Flannery and Son, and for a determination of the interest of the parties in P. Flannery and Sons, Inc., an Illinois corporation and for dissolution of the partnership. It was among the parties agreed that this cause should proceed to a final adjudication as to the respective rights and interests of the parties in and to the partnership and the corporate capital and profits and that thereafter an accounting should be had and taken by the court. The question of the accounting is, therefore, not involved in this appeal.

The suit was originally instituted by Mary Flannery, and was directed against the rest of the parties litigant herein. Later, after notice to defendant James P. Flannery, by their petition, Vincent Flannery, Charles

Flannery, Jerome Flannery and Abbott Flannery, asked to join as parties plaintiff, praying the same relief as the original plaintiff, Mary Flannery. During the pendency of the suit, Charles Flannery died, and Viola A. Flannery, his widow, as administratrix of his estate was substituted in his stead.

The record discloses that the partnership was engaged in the handling and selling of building materials in the City of East St. Louis, Illinois. It had its rather nebulous beginnings, according to plaintiffs' theory, when it was founded by Patrick Flannery, father of the parties litigant, who continued to own the business up to the time of his death in 1931; they claim that for 30 years prior to his death, he permitted the business to be conducted under the name of "P. Flannery and Son" as a trade name without reference to any particular son, and upon his death, the business became the property of his wife, the mother of plaintiffs and defendant, by the terms of a will, which bequeathed all of his personal property to the widow, but which will was never filed for probate; that upon the death of said mother, intestate, a one-sixth interest in the business vested in plaintiffs and defendant. This theory of ownership in the father and mother seems to be predicated upon some rather vague conversations between them, both of whom are now deceased, and testified to by various plaintiffs.

Defendant claims that his father loaned him $1,200, in 1899 with which he purchased the remnants of the Contractor's Material Company, that he, defendant, was a minor at the time, and the name of Patrick Flannery and Son was used to obtain credit, and that this loan was repaid to his father, who the evidence seems to indicate, was not active in the business, since 1918.

In the latter part of 1917 or early in 1918 a copartnership was created by defendant, James P. Flannery and his brother, William J. Flannery, under the firm

name and style of "P. Flannery and Son," each owning an equal one-half interest therein. This partnership continued until the death of William J. Flannery on September 7, 1922, at which time by operation of law, it was dissolved.

Regardless of the activities of P. Flannery in the organization of the business and the interest he may have had therein, by written agreement dated April 1, 1918, and by deed of conveyance dated April 19, 1918, he transferred all or any interest he may have had to James P. Flannery and William J. Flannery.

Upon the death of William J. Flannery, P. Flannery purchased for the next of kin of William J. Flannery, from Hazel Moody Flannery, the widow of William J. Flannery, in consideration of the sum of $10,000 the interest of William J. Flannery, as evidenced by an agreement dated October 7, 1922, and by quitclaim deed dated October 7, 1922, she conveyed certain real estate to Patrick Flannery, and Mary Flannery, his wife, James P. Flannery, Abbott Flannery, Vincent Flannery, Mary Flannery, Jerome Flannery and Charles Flannery.

Thereafter, on the 25th day of April, 1929, Patrick Flannery and Mary Flannery, his wife, conveyed by warranty deed, "all of the right, title and interest of the grantors," in the real estate described in defendant's exhibits 6 and 14, to James P. Flannery, Abbott Flannery, Vincent Flannery, Mary Flannery, Charles Flannery and Jerome Flannery. It is conceded that all interest in both the real estate and personal property received from Hazel Moody Flannery passed to, and became therein property in equal shares of James P. Flannery, Abbott Flannery, Vincent Flannery, Mary Flannery, Charles Flannery and Jerome Flannery.

Thereupon, as admitted by the pleading herein, a new partnership was created, composed of James P. Flannery, Mary Flannery, Jerome Flannery, Abbott

Flannery and Charles Flannery, and until the time of incorporation continued to operate as a copartnership under the firm name of P. Flannery and Son.

At the time of the death of William J. Flannery, on September 7, 1922, the copartnership assets, consisting of real and personal property, were owned equally, share and share alike, by James P. Flannery and William J. Flannery, and the record discloses no act on the part of James P. Flannery divesting himself of his undivided one-half interest as copartner of William J. Flannery. Therefore, upon the dissolution of the copartnership of James P. Flannery and William J. Flannery, he was entitled to an accounting for one-half interest therein. The heirs and next of kin, by virtue of the agreement and conveyance of Hazel Moody Flannery, could acquire no greater interest than that possessed by William J. Flannery, and it therefore follows that Patrick Flannery and Mary Flannery, his wife, could acquire no greater interest than that possessed by William J. Flannery, and that Patrick Flannery and Mary Flannery, his wife, could convey no more than the one-eighth interest which each held, and vesting each of the five plaintiffs and defendant with a one-sixth interest in and to the interest owned by William J. Flannery, now deceased. Thus, the interest contributed by each plaintiff to the copartnership is one twelfth and by the defendant seven twelfths and it must necessarily follow that the defendant, James P. Flannery is the owner of seven twelfths of the copartnership assets and the plaintiffs, Abbott Flannery, Vincent Flannery, Mary Flannery, Jerome Flannery, and Viola A. Flannery, as administratrix of the estate of Charles Flannery, are each the owners of one twelfth of the copartnership assets.

On February 6, 1930, the material business, which had previously been conducted as a partnership, was incorporated as an Illinois corporation, under the name of "P. Flannery and Sons, Inc.," 350 shares

being issued to defendant, James P. Flannery and 50 shares each to the plaintiffs, the stock having been issued in the same proportions as the interest of the respective parties in the copartnership. Each shareholder, with the exception of plaintiff, Mary Flannery, upon being notified, signed for and received his stock, and Mary Flannery upon being notified, stated that at some future time she would call for her stock, and on several occasions signed the corporation minute book.

It appears from the record that the partnership assets including the profits derived from the operation of said partnership have at all times belonged to the parties in the proportion of seven twelfths to the defendant, James P. Flannery, and one twelfth to each of the plaintiffs, and that defendant owned 350 shares of the corporate stock of said corporation, and that the plaintiffs each owned 50 shares of the corporate stock, and that the dividends and profits arising from the operation of said corporation belonged to the parties in the proportion of their respective corporate stock holdings namely, seven twelfths to defendant, James P. Flannery and one twelfth to each of the plaintiffs.

As to the facts hereinbefore set forth and the conclusions to be drawn therefrom there would seem to be but little dispute. However, there is a sharp difference as to the proportion in which the parties were to share the profits of the partnership and the corporation. In that regard, the record shows that the plaintiffs in numerous years filed their individual income tax returns wherein were set forth the amount of money received by them, and each of them from the partnership profits and the corporate profits, the said income representing one twelfth of the said corporate and partnership profits, and the plaintiffs were on various occasions examined with reference to their individual returns, which returns showed that they had received one twelfth of the partnership and corporate profits.

Upon a hearing before the special master in chancery, the master found that defendant was the owner of and entitled to seven twelfths of the original assets of the partnership, and that plaintiffs were the owners of a one twelfth interest each, and that defendant was entitled to share in the corporate capital, dividends and profits to the extent of seven twelfths, and plaintiffs, one twelfth each. In his report, the master held that under sec. 18, Uniform Partnership Act, ch. 106½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 97.18], which provides as follows:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them by the following rules, (a) Each partner shall be repaid his contribution whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied, and must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits," the evidence in the master's opinion showing no agreement as to the manner or proportion of division of profits and surplus, that plaintiffs and defendant were entitled to a one sixth share in the profits of the partnership.

The decree of the circuit court followed the findings of the master except as to the finding of the master that the plaintiffs and defendant were each entitled to one sixth of the profits of the copartnership. The court found that there was an implied agreement, among all of the parties that the plaintiffs were to receive and did receive one twelfth of the copartnership profits from the date of the death of William J. Flannery and that James P. Flannery was to receive and did receive seven twelfths of the copartnership profits from the date of the death of said William J. Flannery. The ultimate finding of the court was to

the effect that plaintiffs were the owners of and each entitled to one twelfth of the original assets, and the profits and surplus of the copartnership composed of the original parties to this suit, and to one twelfth of the shares, dividends and profits of the corporation, and that defendant is the owner of and entitled to seven twelfths of the original assets and profits and surplus of the copartnership composed of the original parties to this suit and to seven twelfths of the shares, dividends and profits of the corporation. From this decree, plaintiffs prosecute their appeal to this court.

While the record in this case is exceedingly voluminous, there seems to be but one real controverted question involved, and that is the proportion in which the parties are entitled to share in the profits of the copartnership and the corporation. It is the contention of plaintiffs that the court erred in finding and holding that there was an implied agreement between the parties that plaintiffs were entitled to one twelfth each and defendant seven twelfths thereof.

It is their contention further, that there was no agreement, express or implied with reference to the division of the profits and that, therefore section 18, Uniform Partnership Act is applicable thereto, and thereunder plaintiffs and defendant were entitled to one sixth each of the profits of the business.

It is argued on behalf of plaintiffs that partners occupy a fiduciary relationship toward each other and that it appeared from the evidence that all the plaintiffs trusted defendant James P. Flannery and his management of the partnership records, including the income returns made for the partnership. It is quite evident from this record that defendant, James P. Flannery was predominant in the control, management and successful operation of the business. Mary Flannery taught school, and never participated in the partnership activities; at the time of the hearing before the master, Charles Flannery had taken no part

in the business for nearly a year, Jerome Flannery had taken no part in the business for a lesser period of time; Abbott Flannery had not worked at the business for two to four months previously, Vincent H. Flannery had been coming to the place of business, but there is a question as to whether he was actually doing any work. However, all continued to draw their weekly salaries, which they had received when working for the business. The record discloses no fraud or abuse of the fiduciary relationship on the part of defendant.

Partnership and corporate books and records seem at all times to have been open to inspection by each and all of the partners. It further appears that any and all of the partners could at any time and did frequently make withdrawals from the accumulated profits, such withdrawals being charged to their particular account.

After the death of William J. Flannery in 1922, every year thereafter copartnership returns on income tax were made to the Federal government reporting seven-twelfths profit to defendant and one twelfth to each of the plaintiffs. These returns were prepared by the bookkeeper, Arch Guignon and were signed by James P. Flannery as reporting partner. Each and every year from and including the year 1922 up to and including the taking of the testimony in this case, each of plaintiffs made an individual income tax return, reporting that they had received one twelfth of the profits from the copartnership in each particular year. All this time, James P. Flannery made his individual return, reporting that he had received seven twelfths of the profits. The individual returns for the other partners were prepared by Guignon and presented to and signed by the other parties.

During various years, and at various times, United States Treasury Department investigators from the Income Tax Department checked the partnership re-

turn and the individual returns of the plaintiffs and defendant. There is in evidence communications from the Income Tax Division of the United States Government addressed to each of the plaintiffs. The income tax from a number of various years between 1922 and 1937 stated that the particular individual had been examined with reference to his income tax return for that year, the correction, which would be an increase or decrease in amount of income returned and amount of tax paid, and these communications were addressed to the individual plaintiffs at their home address.

While some of the Federal agents who made these examinations were dead, one Zeisler, was produced by defendant, under subpoena, who testified that he knew all plaintiffs except Mary Flannery, and when asked with reference to his examinations of plaintiffs concerning income tax returns, and as to whether or not they had stated to him that their income from the business was one twelfth, stated that under a federal regulation he could not discuss such information or conversation without the taxpayer's consent. Plaintiffs and their counsel were then called upon by counsel for defendant to give such consent, but this was refused. Failure to produce such available evidence gave rise to the presumption that such evidence if produced would be against the party refusing to produce it. *Mantonya v. Reilly*, 184 Ill. 183; *Kaplan v. Stein*, 329 Ill. 253; *People v. Small*, 319 Ill. 437; *Mitchell v. Louisville & N. R. Co.*, 375 Ill. 545.

Claim is made on behalf of the plaintiffs that these individual income tax returns were always prepared by the bookkeeper, and that plaintiffs either signed these returns in blank or as prepared by the bookkeeper without consideration of the contents. Arch Guignon, the bookkeeper, had been employed by the partnership since 1912, and apparently had the confidence of all parties litigant. He was the employee of the partnership and necessarily the employee of

plaintiffs, as well as defendant. The general principle of the law is, that one cannot avoid the effect of an instrument signed by him, on the ground that he signed the same in ignorance of its contents, where this is due to his own carelessness or negligence, 26 C. J. S. 272. A party who signs an instrument relying upon representations as to its contents when he has an opportunity to ascertain the truth by reading and does not avail himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations, *Rugen v. Van Berschot,* 274 Ill. App. 359.

There can be no question but what plaintiffs knew that defendant claimed to own seven twelfths of the business. Plaintiff Vincent Flannery testified that four or five years before the hearing defendant had stated to him that he owned seven twelfths. Mary Flannery testified that defendant had told the boys (other plaintiffs) that he owned seven twelfths.

Partnership agreements, as to the division of profits, may be express or implied from the acts, transactions and previous conduct of the copartners in respect thereto, *McCall v. Moss,* 112 Ill. 493; *Gregg v. Hord,* 129 Ill. 613. In the *McCall* case, the court said, at page 503, "The members of the firm had the right if they saw proper, to waive any provisions in the original contract of co-partnership or change the contract or modify it in any manner they might think proper. A change in the written articles may sometimes be inferred from a long course of dealings between the members of the firm, inconsistent with the written articles."

In *Gage v. Parmelee,* 87 Ill. 329, it was held that a partner having immediate and active charge of the business of the firm, and devoting his whole time and attention thereto, and authorized at the beginning of the business to charge $1,000 per year for his services, would be allowed compensation at a larger amount for subsequent years, where it appears that the busi-

ness increased in proportion; that the increased salary was entered on the books and that the copartners had knowledge of the fact and did not make objection to the increase, the court saying, at page 336, "We cannot but conclude, from the evidence, that the increase of salary was made, and that it was with the knowledge and assent of appellant."

In the instant case, the conduct of the partners over a period of 18 years and even after they admitted they were advised as to defendant's claims in making their return several years without protest on the basis of having received one twelfth of the partnership profits, was such, that we believe that the court was fully justified in finding that there was established an implied agreement with reference to the division of the profits, both as to the copartnership and the corporation.

The maxim that equity aids the vigilant, not those who slumber on their rights, expresses the attitude of equity toward laches and stale demands. One, believing he has a right, and seeing another infringing upon such alleged right, has the duty to assert such right and upon failure to do so, he will be estopped. *Bondy v. Samuels*, 333 Ill. 535; *Stresenreuter Bros. v. Bowes*, 233 Ill. App. 143; *O'Connell v. Heed*, 219 Ill. App. 598. Estoppel may arise from silence as well as words. It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak and knowing the circumstances, keeps silent. *Milligan v. Miller*, 253 Ill. 511; *Oliver v. Ross*, 289 Ill. 624; *Bondy v. Samuels, supra*.

For a long period of years, plaintiffs permitted their employee, Guignon, the bookkeeper, to prepare a return showing that they were each entitled to one twelfth of the profits. For many years the books of the business carried the entries showing the division of profits at one twelfth each to plaintiffs and seven twelfths to defendant, had they cared to examine them,

but apparently they did not care to do so. They knew of defendant's claim as to his proportion of the profits, but remained silent. They should not be heard now to claim that they did not consent to that proportion of division of profits. We believe that the decree of the circuit court of St. Clair county was right, and the judgment will be affirmed.

*Affirmed.*