(No. 68659.—

ERICA HENRY, by her Mother and Next Friend, Jane Henry, Appellant, v. ST. JOHN'S HOSPITAL *et al.*, Appellees.

*Opinion filed September 19, 1990.—Modified on denial of rehearing November 30, 1990.*

536

RYAN, J., dissenting.

Bruce N. Cook, of Belleville, for appellant.

John Meyer, of Pierce & Meyer, of Chicago, Hugh Graham III, of Graham & Graham, of Springfield, and Gary M. Peplow and Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

David J. Letvin and David M. Stein, of Letvin & Stein, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Murvel Pretorius, Jr., and Mary W. McDade, of Quinn, Johnston, Henderson & Pretorius, of Peoria, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Erica Henry, was severely injured during her birth as a result of the negligent administration of the drug Marcaine, an anesthetic, to her mother. Plaintiff sued defendants St. John's Hospital and Dr. Shari

Fitzgerald (defendants) in a medical malpractice action. Plaintiff also sued Sterling Drug, Inc., and Breon Laboratories, Inc. (Sterling-Breon), the manufacturers of the drug, in the same action for failure to properly warn about the drug and failure to contraindicate it for the usage which allegedly caused plaintiff's injuries. During the trial, Sterling-Breon filed a contribution claim against defendants, alleging that Dr. Fitzgerald had negligently administered the drug.

The circuit court of Sangamon County found as a matter of law that defendants had violated the standard of care and directed a verdict as to that issue. On the issue of causation, the jury returned a verdict against defendants and Sterling-Breon, and assessed $10 million in compensatory damages. The jury determined that defendants' *pro rata* share of these damages was 7%, and that Sterling-Breon was liable for 93% of the compensatory damages. (*Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 725, 728.) In a remittitur, the trial court reduced the medical-expenses portion of the award for compensatory damages and entered judgment against defendants and Sterling-Breon for $8,511,759. In addition, the jury returned a verdict against Sterling-Breon for $7 million in punitive damages. 180 Ill. App. 3d 558, 561.

Plaintiff's mother, Jane Henry, brought a separate action on her own behalf against defendants and Sterling-Breon in which she alleged that their actions constituted an intentional infliction of emotional distress. After the mother's action was dismissed on the pleadings, she appealed. Defendants and Sterling-Breon appealed plaintiff's jury verdict. 180 Ill. App. 3d at 562.

While both appeals were pending, plaintiff filed a petition for approval of minor plaintiff's settlement agreement with Sterling-Breon and for a good-faith finding pursuant to the Contribution Act (Ill. Rev. Stat. 1987,

ch. 70, pars. 301 through 305). The details of the settlement are included in the appellate court opinion and need not be repeated here. (See 180 Ill. App. 3d at 562-63.) Nevertheless, this agreement between plaintiff and Sterling-Breon provided a monetary settlement of both plaintiff's and her mother's claims against Sterling-Breon, but for a total current cash value which was much less than the amount Sterling-Breon was liable to pay plaintiff on the jury's verdict. The agreement specifically stated that plaintiff and her parents intended to pursue their claims against defendants. (180 Ill. App. 3d at 562.) The agreement also provided for the indemnification of Sterling-Breon for any claims brought by defendants against Sterling-Breon for contribution. 180 Ill. App. 3d at 563.

The trial court found that the settlement was in good faith, dismissed Sterling-Breon from plaintiff's action, and vacated the judgment against Sterling-Breon. (180 Ill. App. 3d at 563.) The appellate court then affirmed the judgment against defendants. *Henry*, 159 Ill. App. 3d at 735; 180 Ill. App. 3d at 563-64.

Plaintiff then initiated post-judgment proceedings against defendants. Defendants responded by tendering a check to plaintiff for the 7% of the judgment they were liable for, plus interest, and petitioning the trial court for entry of judgment on the jury verdict. The trial court denied defendants' motion, holding that defendants were jointly and severally liable for the entire jury verdict sum. The court then held that after the settlement, the amount of recovery had been reduced by $3.35 million, making defendants liable for the remainder of the verdict—$5.51 million in compensatory damages, $1.53 million in interest accrued up to that date, and any interest after that, accruing at a rate of $1,359 per day. 180 Ill. App. 3d at 564.

Defendants appealed this judgment. The appellate court, in reversing the trial court's ruling, looked to the language of the Contribution Act, which provides that where two or more persons are subject to tort liability to the same person for the same injury, there is a right of contribution among them. (180 Ill. App. 3d at 564; Ill. Rev. Stat. 1987, ch. 70, par. 302(a); see *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 322; see generally M. Polelle & B. Ottley, Illinois Tort Law 671-73 (1985) (discussing the Contribution Act).) This right of contribution exists only in favor of tortfeasors who have paid more than their *pro rata* share of the common liability, and recovery is limited to the amount they have paid in excess of their *pro rata* share. Ill. Rev. Stat. 1987, ch. 70, par. 302(b); see *Houser v. Witt* (1982), 111 Ill. App. 3d 123, 125.

The appellate court focused on section 2(c) of the Contribution Act, which provides that a settlement agreement, made in good faith with one or more persons liable in tort arising out of the same injury, will not discharge any of the remaining joint tortfeasors from liability unless the agreement expressly provides for such a discharge. It further states that the settlement will reduce the amount the other tortfeasors owe by the amount stated in the settlement, or the contribution actually paid, whichever is greater. (180 Ill. App. 3d at 564-65, citing Ill. Rev. Stat. 1987, ch. 70, par. 302(c).) The appellate court also noted that the Contribution Act expressly provides that a tortfeasor who settles is discharged from all liability for contribution and is not entitled to recover from any tortfeasor who is still liable (180 Ill. App. 3d at 565, citing Ill. Rev. Stat. 1987, ch. 70, pars. 302(d), (e)), while it maintained that a plaintiff's ability to recover the full amount of the judgment from any one or more defendants subject to liability in tort for the same injury to the same person is not affected by

the Contribution Act. 180 Ill. App. 3d at 565, citing Ill. Rev. Stat. 1987, ch. 70, par. 304.

In its analysis, the appellate court first stated that the function of a court in construing statutes is to ascertain and give effect to the statute's legislative intent. (180 Ill. App. 3d at 565, citing *Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266.) The court then analyzed the legal precursors and legislative history of the Contribution Act, concluding that one of the main purposes of the Act was to spread the liability among joint tortfeasors in proportion to the degree each was responsible for the injured party's damages. (180 Ill. App. 3d at 565-67.) Using this as its foundation, the court interpreted the Contribution Act as providing that an injured party who has reduced liability to judgment by verdict in an amount certain and then settles with a tortfeasor who is financially able to satisfy the entire judgment, has to waive the right to enforce any portion of the judgment not corresponding to a nonsettlor's percentage of negligence against any nonsettling tortfeasors, despite the Contribution Act's maintaining an injured party's right to hold all defendants jointly and severally liable. 180 Ill. App. 3d at 569-70.

The appellate court based much of its reasoning on *Bartels v. City of Williston* (N.D. 1979), 276 N.W.2d 113. (180 Ill. App. 3d at 568-69 (the court also relied on a similar case, *Prudential Life Insurance Co. v. Moody* (Ky. 1985), 696 S.W.2d 503).) The *Bartels* court held that joint and several liability exists to benefit the injured party and can be waived by a settlement with a single joint tortfeasor, which serves to limit the injured party's recovery from any remaining tortfeasors to the percentage of negligence attributed to each. (180 Ill. App. 3d at 569, citing *Bartels*, 276 N.W.2d at 122.) The appellate court found a direct correlation between the statutory language cited in *Bartels* and the Contribution Act, hold-

ing that plaintiff waived joint and several liability and that recovery from defendants was limited to the 7% amount attributed to them by the jury. 180 Ill. App. 3d at 569-70.

We disagree with the appellate court's analysis in the case at bar and therefore reverse. Despite the many issues plaintiff raises on appeal, we need only address the appellate court's incorrect interpretation of the Contribution Act. We hold that an injured party does not waive the right to enforce a judgment against a jointly and severally liable tortfeasor by settling with another joint tortfeasor.

We find that the appellate court has misapplied the basic principles of statutory interpretation in the case at bar. We agree that this court, when it interprets statutes, has a duty to determine the intent of the legislature when enacting the statute in question and to enforce that intent. (*Faheem-El v. Klincar* (1988), 123 Ill. 2d 291, 297-98.) However, the rules of statutory construction require us to first look to the statutory language itself as the best indication of the intent of the drafters (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151; *People v. Robinson* (1982), 89 Ill. 2d 469, 475), and where the intent can be ascertained from the statute's language, it will be given effect without resorting to other aids for construction (*Robinson*, 89 Ill. 2d at 475). When interpreting a statute, we must give the language of the statute its plain and ordinary meaning. *Maloney v. Bower* (1986), 113 Ill. 2d 473, 479.

The appellate court did attempt to give the language of section 3 of the Contribution Act its plain and ordinary meaning when it endeavored to define the term "amount." (180 Ill. App. 3d at 567.) The pertinent part of section 3 states:

"Amount of Contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute *to one seeking contribution* an amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 70, par. 303.

While the appellate court's analysis of the legislative history surrounding the Contribution Act was all correct, it is irrelevant. (See *Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 469-70.) The plain language of section 3 states that no party is required to contribute more than that party's *pro rata* share to one seeking contribution. The right of contribution contemplated by this statute exists among joint tortfeasors, not between tortfeasors and the parties they injure. (See Ill. Rev. Stat. 1987, ch. 70, pars. 302(a), (b).) Section 4 of the Contribution Act expressly states that a plaintiff's right to recover the full amount of a judgment from any single defendant is not affected by the provisions of the Act. (Ill. Rev. Stat. 1987, ch. 70, par. 304.) Sections 2(c) and 2(d) explain the only way a defendant can escape joint and several liability under the Act—a release, or covenant not to sue or not to enforce judgment of that tortfeasor's liability, which a plaintiff gives in good faith. However, section 2(c) further explains that the liability of the remaining tortfeasors is reduced only to the extent of any amount stated in the release or covenant, or in the amount paid for it, whichever is greater. Ill. Rev. Stat. 1987, ch. 70, pars. 302(c), (d).

Therefore, when we read these statutory sections together (see *Castaneda v. Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318 (legislative intent must be deter-

mined from entire statute, not just an isolated passage)), we find that the plain meaning of the statutory language indicates that the Contribution Act does not affect a plaintiff's common law right to collect the full amount of a judgment from any individual tortfeasor who is jointly and severally liable for that plaintiff's injuries. (But see Ill. Rev. Stat. 1987, ch. 110, par. 2—1117 (altering the joint and several liability of tortfeasors who are less than 25% responsible for the injury; but statute was not in effect when injury in case at bar occurred).) If a plaintiff elects to settle with one party, the remaining tortfeasors are still jointly and severally liable for the full amount of the judgment, less the amount of the settlement. Thus, the trial court was correct in holding defendants liable for the full amount of the judgment minus the value of the Sterling-Breon settlement agreement.

We also disagree with the appellate court's characterization of the settlement agreement as acting as a waiver of plaintiff's right to the 93% of the judgment for which Sterling-Breon was liable. As we have already stated, the Contribution Act creates a right of contribution *among joint tortfeasors.* The language of the Act expressly excludes any other party. (Ill. Rev. Stat. 1987, ch. 70, pars. 302(a), (b), 303 ("where 2 or more persons are subject to liability in tort arising out of the same injury *** there is a right of contribution *among them* ***. The right of contribution exists *only* in favor of a *tortfeasor* ***. *** [N]o person shall be required to contribute *to one seeking contribution* an amount greater than his pro rata share" (emphasis added)).) Also, section 4 of the Act explicitly states that a plaintiff's right to fully recover from any one or more joint tortfeasors is not affected by the provisions of the Act. (Ill. Rev. Stat. 1987, ch. 70, par. 304.) We therefore find nothing in the language of the statute to support the appellate court's finding that a plaintiff's settlement agreement with one

joint tortfeasor acts as a waiver of the right to jointly and severally enforce a judgment under the Contribution Act.

We also find that the appellate court's reliance on the *Bartels* and *Moody* cases was misplaced. In *Bartels*, the court interpreted a section of North Dakota's contribution statute, which is similar to section 2(c) of our Contribution Act, as having been impliedly repealed by a subsequent comparative negligence statute which required the jury to render a separate verdict as to each defendant and apportion the damages accordingly. The *Bartels* court further stated that the provision in the comparative negligence statute, which provided that joint tortfeasors shall remain jointly and severally liable, was included for the benefit of the injured party and was waivable. *Bartels*, 276 N.W.2d at 121-22.

*Bartels*, however, is distinguishable from the case at bar. Illinois' comparative negligence statutes (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1116, 2—1117, 2—1118) were not in effect when plaintiff's injuries occurred. Therefore, no subsequent legislative action existed in this State to help us interpret the Contribution Act for the purposes of the case at bar. Also, the statutory language which the appellate court quoted from *Bartels* was from the North Dakota comparative negligence statute, not that State's contribution act. (See 180 Ill. App. 3d at 569; *Bartels*, 276 N.W.2d at 121.) It was therefore inappropriate for the appellate court to use statutory language which nullified a statute similar to our Contribution Act in such a way as to contradict the plain meaning of our statute.

In a similar fashion, the *Moody* case concerned a statute which addressed the issue of comparative negligence, rather than contribution. Therefore, *Moody* is also distinguishable from the case at bar. *Moody*, 696 S.W.2d at 504.

Because the Contribution Act focuses on the rights of joint tortfeasors, the appellate court should have focused the waiver issue on the actions of defendants, not plaintiff. Defendants appear to have anticipated this, because they claim that any attempt on their part to pursue a contribution action against Sterling-Breon became futile when plaintiff and Sterling-Breon entered into the settlement agreement, because section 2(d) of the Contribution Act states, "The tortfeasor who settles with a claimant *** is discharged from all liability for any contribution to any other tortfeasor." (Ill. Rev. Stat. 1987, ch. 70, par. 302(d).) Defendants argue that allowing plaintiff to effectively choose the percentage of liability she will enforce in judgment makes post-judgment settlements impossible in cases with joint tortfeasors. They further claim that plaintiff's interpretation of the Contribution Act actually serves to destroy defendants' right to pay only their *pro rata* share of the judgment, because their ability to seek contribution from Sterling-Breon was nullified by the settlement and was completely out of their control. Thus, defendants impliedly argue that they cannot be held to have waived the right to pay only their *pro rata* share.

Defendants, however, mischaracterize their rights under the Contribution Act. Defendants do not have a right to have their liability limited to their *pro rata* share of the judgment. Rather, section 2(b) of the Act gives them a right of contribution if they pay more than their *pro rata* share of the common liability. Section 2(b) also states that no tortfeasor is liable to *make contribution* for more than his *pro rata* share. (Ill. Rev. Stat. 1987, ch. 70, par. 302(b).) Thus, defendants have only a right to recoup from the other joint tortfeasors any amount they pay to plaintiff in excess of their own *pro rata* share.

However, defendants have waived any right of contribution. When there is a pending action in a personal injury case involving joint tortfeasors, the contribution claim should be asserted by counterclaim or by third-party claim in that action, or else the contribution claim is barred. (*Laue v. Leifheit* (1984), 105 Ill. 2d 191, 195-97.) The *Laue* court designed this rule to prevent separate juries from deciding the separate issues of liability to the plaintiff and the percentages of liability among the defendants—thus avoiding a multiplicity of lawsuits and the possibility of inconsistent verdicts. Even though the question of defendants' right to contribution is being raised on appeal, rather than in a separate trial proceeding, we find the waiver principle equally applicable.

The *Laue* court's construction of section 5 of the Contribution Act leads us to conclude that anytime a joint tortfeasor fails to bring his contribution claim in the original action, any claim to contribution is thereafter a nullity. Section 5 states:

> "Enforcement. A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (Ill. Rev. Stat. 1987, ch. 70, par. 305.)

The *Laue* court interpreted the language of section 5 which provides that a contribution claim may be asserted by a "separate action before or after payment" as covering situations where the injured party has not initiated a pending lawsuit. However, where there is a pending action, the contribution claim must be asserted in that action. (*Laue*, 105 Ill. 2d at 196.) Therefore, the plain meaning of section 5's language mandates that, unless a joint tortfeasor brings a counterclaim or third-party claim for contribution in the original action, any claim for relief under the Contribution Act is thereafter waived. Though the case at bar is factually distinguish-

able from *Laue,* we find no reason to depart from that decision's express holding.

Also, we must note that the appellate court has already settled this issue. The first time this cause came before the appellate court, that court held that the trial court was correct in not allowing defendants to file a contribution counterclaim. The trial court determined that defendants had requested leave to file the counterclaim, which amounted to an amendment of the pleadings, at such a late stage of the trial that to allow defendants' request would have prejudiced the other parties. It further noted that the counterclaim also amounted to defendants' raising a new issue after all parties had rested their cases. The appellate court expressly held that the counterclaim had not been raised in a timely fashion. (*Henry,* 159 Ill. App. 3d at 734.) This serves only to support our holding that by failing to preserve their contribution rights in the original action, defendants have effectively waived those rights.

Defendants further argue, against the requirement that they must file a contribution claim in the original action in order to preserve their right to pay no more than their *pro rata* share of the judgment, that the trial court's finding that the settlement agreement was in good faith was erroneous. Specifically, defendants claim that this ruling effectively bars them from seeking contribution, and only serves to allow plaintiff and Sterling-Breon to "gang up on" defendants, who were not parties to the settlement agreement.

Section 2(d) of the Contribution Act indeed does provide that a joint tortfeasor who settles will escape liability for contribution. (Ill. Rev. Stat. 1987, ch. 70, par. 302(d).) We need not decide, however, whether a settlement between a joint tortfeasor and a plaintiff, entered into after a jury has determined the amount of each joint tortfeasor's *pro rata* share of the judgment amount,

which settlement results in one joint tortfeasor's paying substantially less than its *pro rata* share while cutting off that tortfeasor's contribution liability to the remaining joint tortfeasors, is a good-faith settlement under the Contribution Act. This is because a section 2(d) discharge of contribution liability cannot occur where the settling joint tortfeasor not only has no contribution liability before he entered into the settlement agreement but, because of the nonsettling tortfeasors' failure to preserve their contribution claim, can have no such liability thereafter.

As we have already explained, defendants in the case at bar failed to preserve their right to contribution from Sterling-Breon, because they neglected to raise the contribution claim in a timely fashion during the original proceeding. The doctrine of contribution among joint tortfeasors is equitable in origin (see *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12-13; 18 Am. Jur. 2d *Contribution* §§3 through 5 (1985)), and "equity aids the vigilant and not those who sleep on their rights" (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 146, citing *Flannery v. Flannery* (1943), 320 Ill. App. 421, 432). Defendants had ample opportunity to alert the trial court to their interests by filing a contribution claim at some point during the original trial. This means that, at the time the trial judge approved the settlement agreement, Sterling-Breon could not possibly have been liable to defendants for contribution; the right had been waived. Technically, Sterling-Breon had no contribution liability to be discharged at the time the "good-faith" determination was made. The trial court's finding that the settlement agreement was in good faith, therefore, could not possibly be a bar to defendants' contribution claim against Sterling-Breon. *Cf.* Ill. Rev. Stat. 1987, ch. 110, par. 2—1117 (tortfeasors who are less than 25% responsible are

only severally liable for damages arising from negligently inflicted bodily injury; statute not in effect at time of plaintiff's injury).

Defendants also characterize the trial court's holding them liable for the entire remainder of the judgment sum, rather than for 7% of the damages as the jury determined, as an improper post-judgment reallocation of the jury verdict. Defendants rely on this court's decision in *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 167-70. In *Kerns*, one of three joint tortfeasors entered into a post-judgment loan receipt agreement with the plaintiff. This agreement provided for the tortfeasor to lend money to the plaintiff for the purpose of financing the plaintiff's appeal. This loan was to be paid back from any money recovered from the remaining joint tortfeasors. The *Kerns* court held this agreement void as an improper assignment of a personal injury judgment to a party who is liable for the injury. The *Kerns* court stated that this type of loan receipt agreement was proper only if made before the liability of the multiple tortfeasors is adjudicated. Defendants see a direct correlation between the type of post-judgment manipulation in *Kerns* and the post-judgment agreement entered into here.

We disagree. The type of loan agreement that existed in *Kerns* was a remnant left from the time when contribution among joint tortfeasors was prohibited at common law. In effect, these loan agreements allowed plaintiffs to apportion liability among the joint tortfeasors, despite the ban on contribution. However, at that time this court would only uphold as valid those loan receipt agreements which were entered into before liability was adjudicated. This was done to allow the joint tortfeasors to use the agreement for impeachment purposes at trial. (See *Kerns*, 76 Ill. 2d at 168-70; see also *Skinner*, 70 Ill. 2d at 12.) The *Kerns* court also held that a post-judgment loan receipt agreement allows a joint tortfeasor to

avoid the bar to contribution or indemnification when not entitled to it. *Kerns*, 76 Ill. 2d at 171.

Thus, *Kerns* is wholly inapplicable to the case at bar. The rights which the *Kerns* court sought to protect are no longer an issue because our decision in *Skinner*, codified by the Contribution Act, now allows for a right of contribution among joint tortfeasors. (See M. Polelle & B. Ottley, Illinois Tort Law 671-73 (1985).) That is, provided joint tortfeasors employ the machinery of the Contribution Act, they can prevent the type of inequities which the *Kerns* court decried. As we have explained already, however, defendants have failed to follow the procedures of the Act. Therefore, defendants' use of *Kerns* to argue issues related to contribution is akin to the use of an overturned case to support their position.

Accordingly, we hold that plaintiff did not waive her right to enforce judgment against defendants by settling with another joint tortfeasor, and therefore reverse the judgment of the appellate court. We affirm the judgment of the circuit court of Sangamon County and hold that defendants, by failing to file a claim for contribution during the trial, waived their right to contribution from the other joint tortfeasors, and, under the express terms of the Contribution Act, are jointly and severally liable for the entire amount of the judgment, less the amount which Sterling-Breon paid plaintiff in settlement.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE RYAN, dissenting:

There is something terribly wrong with the construction we have placed on the law in relation to contribution, which permits the enhancement of the obligation of defendants St. John's Hospital and Dr. Fitzgerald (St. John's-Fitzgerald) to the plaintiff from $715,559.07 to $5,511,759 through the unexplained maneuvering be-

tween plaintiff and the drug company defendants. I must, therefore, dissent.

The jury found that defendants St. John's Hospital and Dr. Fitzgerald's *pro rata* share of plaintiff's compensatory damages was 7%, which, with interest to the date of tender, amounted to $715,559.07. However, because of plaintiff's settlement with the drug company defendants, whose *pro rata* shares of the compensatory damages, as found by the jury, totaled 93%, for substantially less than that amount, defendants St. John's Hospital and Dr. Fitzgerald have now had judgment entered against them for $5,511,759, plus interest. Also, because the trial court found the settlement to be in good faith under our Contribution Act, as noted in the majority opinion, defendants St. John's Hospital and Dr. Fitzgerald's contribution rights against the defendants who had settled have been terminated.

Addressing first the question of the good faith of the settlement between the plaintiff and the drug companies, I cannot understand why plaintiffs would settle a claim against the drug company defendants, whose 93% *pro rata* share of the verdict was nearly $8 million, for roughly $3,350,000. As noted later, however, an examination of the structured settlement may shed some light on this. There is no indication that the drug companies were insolvent or that there was any reason that the full 93% of the verdict, or indeed the entire verdict, could not have been collected from the drug companies.

It appears that the settlement was entered into while the case was pending on the first appeal, that is, the appeal from the original verdict. That appeal is reported in 159 Ill. App. 3d 725. It was noted in the appellate court's opinion in the second appeal (180 Ill. App. 3d 558) that St. John's-Fitzgerald filed objections to the settlement. There is also noted in the second appeal that the trial court found that the settlement was in good

faith and that St. John's-Fitzgerald attempted to appeal from the good-faith finding and the dismissal of plaintiff's action pursuant to the agreement. The appellate court dismissed that appeal as not being based on a final order. The appellate court stated, in the second appeal, that St. John's-Fitzgerald argued, in that appeal, that "the settlement, if it allows for a post-judgment shifting of responsibilities, is not in good faith." (180 Ill. App. 3d at 564.) This history is set forth in the appellate court's opinion in the second appeal. (180 Ill. App. 3d at 562-64.) Thus, St. John's-Fitzgerald objected to the settlement. The trial court ruled that the settlement was in good faith and an appeal was taken from that order. The appeal was dismissed as not being based on a final order. The trial court then entered judgment against St. John's-Fitzgerald based on the settlement agreement and the second appeal was taken, in which the good-faith question was raised. The case is before us on the allowance of the petition for leave to appeal from the appellate court's holding in the second appeal. (It should be noted that the appeal from the good-faith finding of the trial court which was dismissed came between what are referred to herein as the first and second appeals.)

In my opinion, an agreement which permits an unconscionable, unexplained shifting of liability from the defendants who have been found 93% responsible to the defendants who were found to be only 7% responsible, and which cuts off the right of contribution of the less responsible defendants from the more responsible defendants, is not a good-faith settlement.

I fear that trial courts and the appellate court have too casually assessed the good-faith requirement of settlements between plaintiffs and one or more of several defendants. In determining the good faith of a settlement, the interests of all of the parties affected by such a settlement should be considered, not just the interests

or preferences of the parties to the agreement. Settlement agreements should not be used as an instrument of conspiracy to "gang up on" a nonsettling defendant, thereby shifting a substantial part of the liability to one not a party to the agreement. This is particularly true where, as in this case, there has been a determination that the nonsettling defendant is much less culpable than the settling defendant and the result of the settlement shifts the major share of the damages to the less responsible defendant. In such a situation as we have in this case, there should be a showing of a valid reason for such a disparate settlement which brings about such an inequitable result.

I acknowledge that section 4 of the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 304) makes each defendant, regardless of the finding as to its *pro rata* share of responsibility, severally liable for the entire verdict. That is all the more reason that courts should carefully protect the right of contribution of the one who is forced to pay more than its share of the damages. The purpose of contribution is to place the responsibility on the defendant who has caused the damages, so that each tortfeasor pays its *pro rata* share based on its culpability. The reason for adopting contribution is to permit those who are compelled to pay more than their share to recover from those who have not paid their share. The net result of the majority's construction of the Contribution Act and prior decisions of this court defeats the very purpose which the adoption of contribution in this State sought to accomplish. The reason for adopting contribution can easily be defeated by the loose and casual handling of settlement agreements by our courts. The majority's handling of contribution has resulted in just as inequitable a situation as that which existed before the adoption of the principle of contribution among joint tortfeasors.

554

The majority relies upon *Laue v. Leifheit* (1984), 105 Ill. 2d 191, in holding that St. John's-Fitzgerald waived any right to contribution by not filing a counterclaim for contribution in the original action. I do not agree with the majority's conclusion. I also do not agree with this court's holding in *Laue* and filed a dissenting opinion in that case. However, I must accept *Laue* as the law of this State until it is overruled, but the facts of this case differ from those in *Laue* and I would not extend the holding in *Laue* to the facts of this case. *Laue* involved an automobile accident in which Leifheit and her passengers were injured. Leifheit and her passengers sued Laue and the jury returned verdicts in favor of the plaintiffs, but as to Leifheit, the jury found that she was 33⅓% negligent for comparative negligence purposes. Laue then brought a separate suit against Leifheit for contribution for 33⅓% of the damages he had paid to the other passengers in Leifheit's vehicle.

In our case the facts are different. Here, all parties against whom damages are sought are parties-defendants in this case, and the jury made the determination as to the percentage of damages each defendant should pay by way of contribution. That was not the case in *Laue*. There, Leifheit had not been a defendant as to the claims of the passengers in her car. No damages had been assessed against her and there had been no determination that as to the claims of her passengers she was in any way responsible. The question sought to be litigated in *Laue* was whether Leifheit was responsible for any of her passengers' injuries and, if so, what was the percentage of her responsibility for contribution purposes. Those facts have already been determined in our case. All that St. John's-Fitzgerald is trying to do is to collect from the drug company defendants the amount of the judgment over and above the 7% for which the jury

found St. John's-Fitzgerald responsible. I would not extend the holding in *Laue* to these facts.

Also, the fact that St. John's-Fitzgerald did not timely file a counterclaim for contribution against the drug company defendants is of no significance. The drug company defendants had filed a counterclaim against St. John's-Fitzgerald. It was therefore necessary for the jury to determine the *pro rata* culpability of all of the defendants in the same manner as if St. John's-Fitzgerald had filed a counterclaim for contribution against the drug company defendants. The relative culpability of all defendants was litigated and determined by the jury in the same manner as it would have been had the trial court permitted St. John's-Fitzgerald to file a counterclaim for contribution when it was tendered at the close of the evidence. Thus, there is no reason to apply the holding in *Laue* to the facts of this case.

The appellate court attempted to fashion the remedy of "waiver" to give St. John's-Fitzgerald relief from the inequities that have arisen by the application of *Laue* and the finding of good faith as to the settlement agreement. I fear that a finding that plaintiff has waived her claim against St. John's-Fitzgerald for any amount in excess of 7% of the compensatory damages may result in the plaintiff's, or at least some plaintiff in a future case to which the waiver doctrine is applied, recovering less than the verdict. I would prefer to hold, as indicated above, that the settlement was not in good faith and that the holding of *Laue* does not prevent the filing of a contribution action, and remand this case to the trial court to entertain the contribution claim of St. John's-Fitzgerald, which defendants attempted to file at the close of the evidence.

I stated above that the structured settlement may shed some light on the reason for plaintiff's willingness to settle with the drug company defendants for what ap-

pears to be substantially less than those defendants' share of compensatory damages. The plaintiff's brief, in this court, hints that the drug company defendants used the established law as "negotiating leverage" as a means of getting revenge against St. John's-Fitzgerald because of certain animosity among the defendants that developed during the trial. Plaintiff insists, in her brief, that she "did not work this settlement," but that a codefendant "who took advantage of their partner in tort" was responsible for the settlement. Plaintiff insists she was merely a stakeholder with no interest in who paid.

The structured settlement computation sheet contained in the brief reflects a guaranteed payout of $7,908,084, very close to the amount of the drug company defendants' 93% share of the compensatory damages. The payout over the plaintiff's life expectancy is shown to be $44,361,056. The cost is shown to be $3 million. By use of the structured settlement, plaintiff is assured of receiving from the drug company defendants those defendants' *pro rata* share of the compensatory damages. The life expectancy payout will far exceed both the compensatory and punitive damages awarded by the jury. Since the settlement only cost $3 million by virtue of the several liability aspect of our contribution law, plaintiff can collect over $5 million more from the other defendants, thereby, in effect, enhancing plaintiff's recovery about $5 million above that awarded by the jury. In view of the effect of the structured settlement, I cannot accept plaintiff's protestations of innocence or the assertion that the settlement was all the drug company defendants' idea.

For the reasons stated herein, I dissent from the holding of the majority.